[Crim. No. 11309. Third Dist. Mar. 7, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH REEDER, Defendant and Appellant.

904

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, and Cynthia A. Thomas, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Nelson P. Kempsky, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SPARKS, J.**—Following the filing of our opinion in this case, the California Supreme Court granted hearing and transferred the cause to that court. Recently, the Supreme Court ordered the cause retransferred to this court for reconsideration in light of *People* v. *Belmontes* (1983) 34 Cal.3d 335 [193 Cal.Rptr. 882, 667 P.2d 686]. Pursuant to that mandate, we have made appropriate modifications in light of *Belmontes* and now republish our decision as so modified.

In this case we examine and interpret the statutes and rules governing punishment for violent sex offenses. Defendant Kenneth Reeder appeals from a judgment of the Superior Court of Nevada County sentencing him to state prison for a total unstayed term of forty-one years after a jury found him to be guilty of four counts of forcible oral copulation (Pen. Code, § 288a, subd. (c)),[1] and four counts of rape by means of threats. (Former § 261, subd. 3; now § 261, subd. (2).) He also admitted serving a prior prison

---

[1] All statutory references are to the Penal Code.

term for the crime of forgery. (§ 667.5, subd. (b).) Defendant contends that he was denied his right to a speedy trial as to counts one and two. He also raises numerous sentencing contentions: (1) the decision to impose full, separate, and consecutive sentences for multiple violent sexual crimes against the same victim on the same occasion under section 667.6, subdivision (c), is actually two sentencing choices and the court failed to state different reasons for both choices; (2) section 667.6 may not be applied because the Judicial Council has failed to promulgate special sentencing rules for the application of that section; (3) he was denied equal protection of law by the application of section 667.6; (4) section 667.6, subdivision (c), providing for full, separate, and consecutive sentences in the trial court's discretion, is applicable rather than subdivision (d) which mandates full, separate, and consecutive sentencing; (5) the trial court erred in sentencing him to prison terms for two counts of oral copulation and two counts of rape committed against the same victim on the same occasion; (6) the trial court violated the proscription against the dual use of facts by using the same facts in aggravation to impose both upper terms and consecutive terms; (7) the trial court used improper and unsupported factors in aggravation; and (8) the imposition of consecutive sentences was an abuse of discretion.

Although the People did not file a cross-appeal, the Attorney General raises another sentencing issue. He argues that the trial court imposed an unauthorized sentence where it selected one of the 1980 violent sex crimes as the principal term. We agree with defendant that section 667.6, subdivision (c), and not subdivision (d), applies in this case. We further agree that the sentencing court is required to state reasons for imposing sentence under subdivision (c) which are separate, although not necessarily different, from those justifying the decision to impose a consecutive sentence. We also agree that the overwhelming nature of the evidence is not a factor in aggravation. We further agree that the trial court should not have considered threats of great bodily harm to the victim and her children in counts five, six, seven and eight as a factor in aggravation. Additionally, we agree that the proscription against dual use of facts was violated. Finally, we reject the Attorney General's contention that the trial court imposed an unauthorized sentence when it selected the term of imprisonment for an offense punished under section 667.6 as the principal term. For these reasons we remand for resentencing. We reject all of defendant's other contentions and shall affirm the judgment of conviction.

## FACTS

On March 16, 1979, Stacia S. was visiting her parents in Nevada County. After visiting friends during the day she went to Denny's Restaurant in the

evening. At some point she discovered that she had misplaced her car keys. When Stacia could not locate her keys defendant offered to drive her to a friend's house where she suspected she may have left them. The keys were not at the friend's house, and Stacia mentioned to defendant that she was afraid to go home for fear of what her parents might say. Defendant stated that he would find her a place to stay.

Defendant drove to a motel where he registered under a false name. Stacia believed that defendant intended to leave, but he entered the room with her. Defendant made sexual advances toward Stacia and she became frightened. She tried to walk away but defendant grabbed her and threw her on the bed and said that she was going to have sex with him. Stacia started screaming and defendant advised her to stop. Defendant choked Stacia and forced her to remove her clothing. He forced her to perform an act of oral copulation by threatening to "break every bone in [her] body" if she refused. Defendant then committed an act of sexual intercourse. Afterwards defendant left saying that, while he was sorry, he would kill Stacia if she told anyone.

On the evening of November 28, 1979, Wilma L., who had known defendant for quite a few years, went to the Silver Dollar bar. After drinking at the bar for a couple of hours Wilma left with defendant. He had promised to take her home. Instead of driving toward Wilma's house defendant drove onto the freeway. Wilma insisted on going home but defendant told her that he "had a line on some CB'ers" that he wanted to meet.

Defendant pulled off the main road and stopped. Wilma tried to get out of the car but defendant grabbed her hair and pulled her back. He choked her and told her that if she did not do what he wanted he would kill her. Wilma continued to try to escape and defendant punched her in the face. Defendant forced Wilma to orally copulate him and then removed her clothing. He committed an act of sexual intercourse while threatening to kill her. Defendant drove Wilma back to town and let her out near the Silver Dollar.

On May 10, 1980, Sher S. went to the Coach House, which is a restaurant and dancing hall. She joined her friend Carol, who was sitting with three men, including defendant. When Carol left, Sher told the men that she should leave also, since she should not be there alone, but they assured her that they would not let anything happen to her. Eventually defendant, Sher, and a man named Jay left the Coach House to go to Mr. Charley's to get something to eat.

When Sher told defendant that she was leaving he offered to drive her home. When she told him "no way" he said that he would follow her to make sure that she was all right. Defendant advised her that if he flashed

his lights on and off she should pull off the road because that would mean that she was not driving well. About five to ten minutes after leaving Mr. Charley's defendant began to blink his lights on and off and honk his horn. Sher continued to drive but eventually stopped her car. Defendant told Sher that she was all over the road and could not continue to drive like that without getting arrested. Defendant insisted on driving Sher home but she continued to refuse. Defendant finally pushed her over and got into the car and began to drive. He told Sher that he knew a short cut home and turned onto a side road.

Defendant stopped the car and got out, saying that he had to go to the bathroom. He returned to the car and asked Sher whether she had ever been seduced. Sher answered "no" and defendant said "Well, you're going to tonight." Sher began to cry and defendant told her that they were "going to do it a couple of times," and then she could go home. He forced her head down and made her perform an act of oral copulation. He stopped and forced her to submit to an act of sexual intercourse. A short time later Sher asked to go home and defendant refused, saying that she was going to do it twice. Defendant forced Sher to lie on the car seat while he performed an act of oral copulation with her vagina, and then he committed another act of sexual intercourse.

### THE RIGHT TO A SPEEDY TRIAL

■ Defendant contends that he was denied his right to a speedy trial as to the charges involving Stacia. He notes that although the offenses were alleged to have been committed on March 17, 1979, a complaint was not filed until June 1980. ■ It is settled that the speedy trial provision of the Sixth Amendment is not violated by a prearrest or precomplaint delay. (*United States* v. *Marion* (1971) 404 U.S. 307, 313, 321, 325 [30 L.Ed.2d 468, 474, 479, 481-482, 92 S.Ct. 455]. See *People* v. *Lawson* (1979) 94 Cal.App.3d 194, 197 [156 Cal.Rptr. 226].) Defendant therefore bases his argument on article I, section 15 of the California Constitution, which provides in relevant part: "The defendant in a criminal cause has the right to a speedy public trial . . . ."

■ Defendant has applied a misnomer to his contention. The state constitutional right involved in prearrest and precomplaint delay is not the right to a speedy trial but is rather the right to due process of law. (*Scherling* v. *Superior Court* (1978) 22 Cal.3d 493, 505 [149 Cal.Rptr. 597, 585 P.2d 219].) The argument is not changed, however, for the test is the same. (*Ibid.*) That test weighs the prejudice to the defendant against justification for the delay. (*Ibid.*) This process involves three steps: first, the defendant must establish prejudice; second, the burden then shifts to the prosecution

to justify the delay; and third, the court must balance the harm against the justification. (*People* v. *Lawson, supra,* 94 Cal.App.3d at p. 198.) Prejudice is not presumed from delay which occurs before arrest or accusation, and unless the defendant establishes prejudice no justification need be shown. (*Ibid.*)

In moving for dismissal of the charges involving Stacia due to prearrest and preaccusation delay, defendant relied solely upon a declaration of his counsel. In that declaration counsel pointed out that in the preliminary hearing Stacia testified that she had started to scream when defendant attacked her in the motel room. Counsel then stated that he had been informed that due to the passage of time the names and addresses of the occupants of the adjoining rooms were not available and that defendant had thus been deprived of possible exculpatory evidence. Counsel failed to state who had so informed him, or what efforts had been made to determine whether such witnesses were available. Such unsupported conclusionary assertions based upon hearsay statements of an undisclosed third party are insufficient to establish actual prejudice. (*Blake* v. *Superior Court* (1980) 108 Cal.App.3d 244, 251 [166 Cal.Rptr. 470].) There was thus no need for the court to inquire into justification for the delay. (*Ibid.*)

Moreover the evidence at trial totally rebutted this claim of prejudice due to delay in filing the charges involving Stacia. At trial Gilbert Ghyselinck, the operator of the motel where the incident took place, testified that he keeps registration cards of motel guests in the normal course of business. Those records were made available to investigators prior to trial. At trial the registration card executed by defendant was produced, as was a registration card showing that a Mr. Henshaw occupied the room two doors away on the night in question. Mr. Henshaw testified that on the night in question he did not hear any screams. It thus appears that defendant was not precluded from investigating whether any occupants of the motel on the night in question could give any exculpatory testimony. Consequently defendant was not prejudiced in his defense due to the delay in bringing the charges and any error in denying his pretrial motion to dismiss (and we find none) would not constitute a miscarriage of justice. Reversal is therefore constitutionally forbidden. (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

### SENTENCING

Defendant was convicted of these eight counts of violent sex offenses: count one—oral copulation of Stacia; count two—rape of Stacia; count three—oral copulation of Wilma; count four—rape of Wilma; count five—oral copulation of Sher; count six—oral copulation of Sher; count seven—

rape of Sher; and count eight—rape of Sher. The offenses involving Stacia and Wilma were committed in the year 1979 while those involving Sher were committed in the year 1980.

Effective January 1, 1980, the Legislature amended the Penal Code to increase dramatically the prison term for a person convicted of violent sex offenses. (§§ 667.6, 1170.1, subd. (h); see *People* v. *Karsai* (1982) 131 Cal.App.3d 224, 236 [182 Cal.Rptr. 406].) Particularly relevant to this case is section 667.6, subdivisions (c) and (d). Subdivision (c) provides that when a defendant is convicted of multiple violent sex offenses against the same victim on the same occasion the trial court may, in its discretion, provide for full, separate and consecutive sentences for each offense. (See *People* v. *Belmontes, supra,* 34 Cal.3d at pp. 343-344; *People* v. *Karsai, supra,* 131 Cal.App.3d at p. 237.) Subdivision (d), on the other hand, mandates that when a defendant is convicted of multiple violent sex offenses against different victims or against the same victim on separate occasions, full, separate, and consecutive sentences must be imposed.

In sentencing this defendant the trial court was confronted with an offender convicted of multiple violent sex offenses against multiple victims. The offenses against two of those victims, however, were committed prior to the effective date of section 667.6.[2] The offenses which were committed against Sher after the effective date of section 667.6 involved, as we shall explain, only one victim on one occasion. The trial court applied section 667.6 to the 1980 offenses against Sher. It imposed the upper term of eight years on each of those four counts, ordering the sentences to be full, separate, and consecutive terms. This amounted to a sentence of 32 years in prison, to which was added 1 year for the admitted prior prison term. The sentencing court then designated one of the 1980 offenses as the principal term. On the offenses which occurred prior to the effective date of section 667.6, the court again imposed the upper terms, ordered the sentences to be served consecutively, but stayed all but one-third of the middle term for those offenses pursuant to the governing law at the time those offenses were committed. (§ 1170.1, subd. (a).) The sentences for those four counts (one-third of the middle term of six years or two years) thus added eight years to defendant's total unstayed prison term, for an aggregate term of forty-one years. Defendant raises numerous contentions regarding this sentencing which we now consider.

1. *Sentence Choice*

■ As we have noted, section 667.6, subdivision (d), requires a full, separate, and consecutive sentence when a defendant is convicted of multi-

---

[2]No contention is made in this appeal that the "separate victims" clause of the statute could be applied to the 1979 crimes.

ple violent sex offenses against different victims or against the same victim on separate occasions, while subdivision (c) provides that the court may impose a full, separate, and consecutive sentence for multiple offenses against the same victim on the same occasion. Defendant argues that when subdivision (c) applies, the choice of the trial court actually comprises two sentencing decisions, the first to impose consecutive sentences, and the second to impose a full, separate, and consecutive sentence under section 667.6, subdivision (c), rather than one-third of the middle term under section 1170.1, subdivision (a). Defendant also asserts that each choice must be supported by different reasons.

Defendant is partially correct. In *People* v. *Belmontes, supra,* 34 Cal.3d 335, the Supreme Court concluded that "[i]n deciding whether to sentence consecutively or concurrently, and if consecutively, whether to do so under section 1170.1 or under the harsher full term provisions of subdivision (c) of section 667.6, the court is obviously making separate and distinct decisions. A decision to sentence under section 667.6, subdivision (c) is an additional sentence choice which requires a statement of reasons separate from those justifying the decision merely to sentence consecutively." (*Id.,* at p. 347, fn. omitted.) The court rejected, however, the contention that each sentencing choice must be supported by different reasons. This requirement of separate reasons, the court noted, "does not mean that the reasons justifying full term consecutive sentencing under section 667.6, subdivision (c) must necessarily be different than those used to justify the imposition of consecutive sentences under section 1170.1. . . . What is required is an identification of the criteria which justify use of the drastically harsher provisions of section 667.6, subdivision (c). The crucial factor, in our view, is that the record reflect recognition on the part of the trial court that it is making a separate and additional choice in sentencing under section 667.6, subdivision (c)." (*Id.,* at p. 348.)

The trial court here did not separately state its reasons for both imposing a consecutive rather than concurrent sentence and for imposing the more harsh term under section 667.6, subdivision (c), rather than under section 1170.1. Consequently, the case must be remanded for resentencing.

2. *Specific Sentencing Rule*

Defendant contends that section 667.6, subdivision (c), may not be utilized by the trial court because the Judicial Council has not promulgated a specific sentencing rule governing the application of that section. This contention was also raised and rejected in *Belmontes.* The decision whether to utilize section 667.6, subdivision (c), is a decision regarding consecutive or concurrent sentencing and the factors set forth in California Rules of

Court, rule 425[3] (criteria affecting concurrent or consecutive sentences) are the proper factors to be considered in that determination. (34 Cal.3d at p. 348; accord, *People* v. *Wilson* (1982) 135 Cal.App.3d at pp. 353-354 [185 Cal.Rptr. 498].) As the *Belmontes* court noted, "[t]he criteria listed in rule 425—which, as noted, incorporate those of rules 421 and 423—apply to both decisions and cover all degrees and nuances of depravity." (34 Cal.3d at p. 348.)

### 3. *Equal Protection*

■ Defendant next contends that the absence of sentencing criteria designed specifically for section 667.6, subdivision (c), determinations deprives him of equal protection of the law. Similar equal protection attacks upon section 667.6 have been rejected by the Courts of Appeal. (See *People* v. *Karsai, supra,* 131 Cal.App.3d at pp. 243-244; *People* v. *Preciado* (1981) 116 Cal.App.3d 409, 412 [172 Cal.Rptr. 107].) We reject this contention as well. Defendant, as a sexual offender, is not placed in a special class of criminals subject to arbitrary sentencing since, as we have already noted, the trial court must consider the same factors affecting consecutive or concurrent sentencing applicable to all multiple crimes and must separately state its reasons for utilizing section 667.6, subdivision (c), when it determines to do so. (*People* v. *Belmontes, supra,* 34 Cal.3d at pp. 347-348; see also *People* v. *Wilson, supra,* 135 Cal.App.3d at pp. 355-356.)

### 4. *Discretionary and Mandatory Sentencing*

■ Defendant concedes that the provisions of section 667.6, subdivision (c), may be applied to the crimes involving Sher, but he argues that the provisions of section 667.6, subdivision (d), cannot because the crimes against her did not occur on "separate occasions." We agree.

Subdivision (c) provides: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm whether or not the crimes were committed during a single transaction. If such term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, . . . Such term shall not be included in the determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison."

---

[3]All further references to rules are to California Rules of Court.

Subdivision (d) of section 667.6 reads: "A full, separate, and consecutive term shall be served for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm if such crimes involve separate victims or involve the same victim on separate occasions. [¶] Such term shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison."

Thus compulsory full, separate and consecutive terms are mandated under section 667.6, subdivision (d), whenever the multiple sexual offenses either involve (1) "separate victims" or (2) "the same victim on separate occasions." In contrast, "[w]here the convictions are for offenses against the same victim on the same occasion, the trial court must exercise its discretion in determining whether to sentence the defendant under Penal Code section 1170.1, or, in lieu of that, under section 667.6, subdivision (c)." (*People* v. *Karsai, supra,* 131 Cal.App.3d at pp. 237-238.)

The Attorney General argues that the offenses involving Sher were in fact committed on separate occasions. This argument is based upon the testimony that during the first rape defendant achieved a climax and that he thereafter committed another act of rape. The Attorney General suggests that the termination of the first rape through sexual climax provides a natural point at which the first "occasion" ended and another "occasion" began.

We reject such a strained interpretation of the clear language of section 667.6. A sexual climax, as these nauseating facts reveal, does not necessarily bring a respite from the sexual abuse. Section 667.6, by its terms, necessarily recognizes and presupposes that multiple violent sexual offenses may be committed against one victim on the same "occasion." Since the discretionary subdivision (c) applies "whether or not the crimes were committed during a *single transaction,*" the subdivision (d) phrase "separate occasions" must, as a matter of statutory harmony, refer to some event disconnected from the first sexual transaction. That phrase must also be distinguished from a single transaction within the meaning of the statutory proscription against multiple punishment. The proscription of section 654 against multiple punishment "applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction." (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr.

40, 591 P.2d 63, 3 A.L.R.4th 339].) For purposes of multiple sex offenses, a transaction is deemed divisible (and each offense punishable) when "[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental to the commission of any other." (*Id.*, at pp. 553-554.) In contrast, the test for consecutive punishment under section 667.6, subdivision (d), is not whether a single transaction is divisible but is rather whether the offenses occurred on occasions disjoined from each other.[4] The Legislature's use of the phrase "separate occasions" consequently imposes a requirement of detachment of one episode from another before the mandatory requirements of subdivision (d) become applicable. ██ ██ ██ ██ ██ By detachment we mean an interruption in the criminal activity of sufficient duration or nature that the end of one sexual episode and the start of another can be ascertained with reasonable certainty.[5]

Just as a drama is divided into separate acts with many scenes, so too is the legislative scenario of mandatory consecutive sentences for multiple violent sex offenses. It is the separate acts, and not the scenes, of the criminal tragedy that the law seeks to isolate and punish more harshly.

The forcible sex crimes committed against Sher all occurred on a single evening in one continuous, uninterrupted sequence over a short period of time in a car parked at the same spot. Hence the end of one criminal episode was not set apart by an interruption of sufficient duration or nature that the beginning of another in this theatre of sexual cruelty can be ascertained with reasonable certainty. Accordingly we hold that the "same victim on separate

---

[4]Although each sexual act in a series of acts performed upon a single victim within a short space of time may be separately punished even though they are committed in a single transaction (§ 667.6, subd. (c); *People* v. *Perez, supra,* 23 Cal.3d 545), those acts are not subject to the mandatory full term consecutive provisions of section 667.6, subdivision (d), unless they also occurred on "separate occasions."

[5]This requirement of an episodic detachment has its analogue in rule 425. That rule, as we have observed, sets forth the general criteria affecting the decision to impose consecutive rather than concurrent sentences. Subdivision (a)(3) of rule 425 lists, as a factor militating toward a consecutive sentence, the fact that the "crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." In contrast, section 667.6, subdivision (c), authorizes full term consecutive sentences for violent sex crimes committed "during a single transaction." We construe the phrases "single period of aberrant behavior" and "single transaction" to mean the same thing. Since these identical provisions point in opposite sentencing directions, we hold that subdivision (a)(3) of rule 425 cannot be used to determine whether the sentence should be imposed consecutively under section 667.6, subdivision (c), or concurrently under section 1170.1. In making that determination the sentencing court should use the remaining factors set forth in rule 425. In the context of violent sex offenses, subdivision (a)(3) should be used instead to determine whether the crimes involved the same victim on the same occasion under section 667.6, subdivision (c), or whether they involved "the same victim on separate occasions" within the meaning of section 667.6, subdivision (d).

occasions" clause of section 667.6, subdivision (d), cannot be invoked to require that defendant serve full, separate, and consecutive sentences for each of the offenses committed against Sher.

It is not clear whether the trial court believed that it had discretion to impose less than full, separate, and consecutive terms for the offenses committed against Sher. The probation officer's report recommended the sentence that was ultimately imposed, but failed to specify whether the recommendation was based upon subdivision (c) or subdivision (d) of section 667.6. In sentencing defendant the trial court did not indicate whether it felt compelled to impose the sentence under subdivision (d) or was exercising discretion under subdivision (c). The abstract of judgment ambiguously indicates that the full, separate, and consecutive sentences for counts six, seven and eight were imposed pursuant to "667.6, (c)(d)." ■ Where it is not clear whether a trial court has exercised sentencing discretion, it is appropriate to remand for resentencing. (*People* v. *Austin* (1981) 30 Cal.3d 155, 161 [178 Cal.Rptr. 312, 636 P.2d 1].) Attorney General asserts that the record makes it clear that the trial court would have imposed the maximum possible sentence regardless of its belief concerning its discretion and that a remand is therefore unnecessary. We agree that the trial court indicated an intent to impose a severe sentence and the record well supports such a decision. There are additional sentencing irregularities, however, and we have concluded that a sentencing remand is necessary in any event.

### 5. *Double Punishment*

■ Defendant contends that he may not be punished for two acts of oral copulation and two acts of rape against Sher. He argues that the acts of rape and the acts of oral copulation which occurred on the same occasion must merge together to constitute but one act of each. The argument is based upon the decision in *People* v. *McIntyre* (1981) 115 Cal.App.3d 899 [176 Cal.Rptr. 3], in which the defendant entered the victim's home and forced her to orally copulate him, raped her, and then forced a second act of oral copulation. Under such circumstances the Court of Appeal held that the trial court was not required to instruct *sua sponte* that each juror was required to agree that the defendant committed the same act or acts in order to be guilty of oral copulation. (115 Cal.App.3d at p. 908.) Defendant argues that under the rationale of *McIntyre* the trial court should have stayed one conviction for rape of Sher, and one conviction of oral copulation of Sher.

In *People* v. *Perez, supra,* 23 Cal.3d 545, the Supreme Court rejected the argument that section 654 precludes punishment for multiple sex offenses committed on the same occasion against the same victim. (23 Cal.3d at p. 553.) The court noted that it had held in *People* v. *Hicks* (1965) 63

Cal.2d 764 [48 Cal.Rptr. 139, 408 P.2d 747], that the defendant could properly be punished for two counts of oral copulation and one count of sodomy arising from the same criminal venture, and that it had held in *In re McGrew* (1967) 66 Cal.2d 685 [58 Cal.Rptr. 561, 427 P.2d 161], that the defendant could be punished for two counts of rape and one count of oral copulation committed on the same occasion. (*Perez, supra,* at p. 553.)

In light of the decisions in *Perez, Hicks,* and *McGrew,* we decline to extend the reasoning of *McIntyre* to defendant's situation. To do so would be to hold that once a criminal has committed one particular sexual crime against a victim he may thereafter with impunity repeat his offense so long as he does so on the same occasion. Such a result would be contrary to the purpose of section 654 and to the holding of *Perez,* which recognized that the commission of a number of base criminal acts upon a victim renders a defendant substantially more culpable than the commission of only one such act. (23 Cal.3d at p. 553.) The question, as *Perez* makes clear, is whether each sex offense is a separate and distinct sexual act rather than being merely an act which facilitates the commission of another crime or is incidental to, or the means by which, some other offense was accomplished.

Under the facts of this case there can be no question that defendant was guilty of four separate and distinct sexual offenses against Sher. Defendant told Sher that she was going to "do it a couple of times" before she could go home. He forced her to perform an act of oral copulation by placing her mouth on his sexual organ. He thereafter committed an act of rape during which he ejaculated. He permitted Sher to have a cigarette, and when she asked to go home he reminded her that he said they were going to "do it" twice. He forced her to lie on the seat and committed a second act of oral copulation by placing his mouth on her sexual organs. He then committed a second act of rape. Each act was clearly a separate and distinct act and not merely incidental to or the means by which the other offenses were committed. Defendant may thus properly be punished for each offense.

### 6. *Dual Use of Facts*

The trial court selected count five (oral copulation of Sher) as the principal term and sentenced defendant to the upper term of eight years.[6] Full, sep-

---

[6]In selecting the upper term for that count, the court recited these reasons: "As I indicated, the evidence of the guilt of this particular defendant was indeed overwhelming. Particularly with respect to the victim, namely Sher S. [¶] Two, the crime did involve a threat of great bodily harm both to her and her minor children. [¶] Three, this victim was indeed particularly vulnerable in that she was situated in a very rural part of the county, with no real means of avoiding this particular defendant. [¶] Four, this defendant has indeed engaged in a pattern of conduct which includes both violence and a threat of violence which indicates that he is indeed a serious danger to society. [¶] Five, that the defendant's prior convictions

arate, and consecutive terms were imposed under section 667.6 on the remaining counts involving Sher, viz. counts six, seven and eight. The court imposed the upper terms of eight years on each of those offenses, ". . . for the very same statement of aggravation as made with respect to Count 5, because all of these instances in 5, 6, 7, and 8 did indeed involve threats of great bodily harm to Sher S. Again, the Court is satisfied she was a particularly vulnerable party, and that the pattern of violent conduct would indicate he is a serious danger to society. And any other statements in aggravation the Court made with respect to Count 5 will apply with respect to Counts 6, 7, and 8 in the disjunctive, and the Court finds there is no useful purpose to reiterate them all at this time again."

Consecutive terms were then imposed under section 1170.1 (i.e., one-third of the middle terms) for the counts involving Stacia (counts one and two) and as well as those involving Wilma (counts three and four). As its reasons for imposing these consecutive terms the trial court used the same factors in aggravation that it earlier relied upon to impose the upper term for the violent sex offenses perpetrated against Sher. (Rule 425(b).) In addition, the sentencing court found that the crimes involved separate acts of violence or threats of violence (rule 425(a)(2)), were committed at different times in separate places (rule 425(a)(3)), and involved multiple victims. (Rule 425(a)(4).) ▮ Defendant contends this use of the same facts in aggravation both to impose an upper term and to enhance the term by a consecutive sentence violates the proscription against the dual use of facts contained in section 1170, subdivision (b), and rule 441(c). We conclude that such a dual use violates the rule but not the statute.

The statutory prohibition against the dual use of facts is found in section 1170, subdivision (b). It provides that "[t]he court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under Section 667.5 [prior prison terms], 1170.1 [consecutive sentences], 12022 [armed with firearm and weapon use], 12022.5 [firearm use], 12022.6 [property damage] and 12022.7 [infliction of bodily injury]."[7] By its terms, that statute does not apply to sentences imposed under section 667.6.

---

are numerous according to the—expressly disregarding the conviction in Placer County, which was reversed on appeal—and those will be the reasons for the imposition of the upper term of eight years. [¶] Indeed, the Court should, if it boils down to only aggravation being the fact of having engaged in a pattern of violent conduct which indicates that he is a danger to society, and that this particular crime did involve the use of the threat of great bodily injury, or harm to the victim, that just on those two bases alone, that the upper term would indeed be imposed, although the Court did rely on all of them."

[7]The phrase "fact of any enhancement" has been construed to mean ". . . the fact upon which the enhancement is based, not the fact that an enhancement was imposed." (*People v. Lambeth* (1980) 112 Cal.App.3d 495, 499 [169 Cal.Rptr. 193].)

It is true that the prohibition of section 1170, subdivision (b), covers sentences imposed under section 1170.1 and that this section includes provisions pertaining to the imposition of consecutive sentences. It is also true that a consecutive sentence is an enhancement. (*People* v. *Lawson* (1980) 107 Cal.App.3d 748 [156 Cal.Rptr. 226].) Consequently, section 1170, subdivision (b), precludes the use of the same fact to impose both an upper term and a consecutive sentence levied under section 1170.1. Thus, for example, a sentencing court could not impose the upper term for a burglary for the aggravated circumstance that the defendant was on parole when he committed the crime (rule 421(b)(4)), and then use the same fact in aggravation under rule 425(b) to impose a consecutive sentence for a second crime of forgery. (See, e.g., *People* v. *Ratcliffe* (1981) 124 Cal.App.3d 808, 821-822 [177 Cal.Rptr. 627]; *People* v. *Lawson, supra,* 107 Cal.App.3d at p. 757.) But the consecutive sentences for the violent sexual offenses here were not imposed under section 1170.1; they were imposed instead under section 667.6. Section 667.6 provides for an optional sentencing scheme "in lieu of" section 1170.1. In short, there is no statutory proscription against the dual use of facts when a consecutive sentence is imposed under section 667.6.[8]

We turn now to the rules. Rule 441(c) sweepingly ordains that "[a] fact used to enhance the defendant's prison sentence may not be used to impose the upper term."[9] Unlike the statute, the rule applies to all enhancements, and hence to all consecutive sentences, without regard to the statutory source of those enhancements. Although the rule is broader than the statute, it is not irreconcilable with the statutory scheme.

The Judicial Council is empowered by article VI, section 6 of the California Constitution to ". . . adopt rules for court administration, practice and procedure, not inconsistent with statute, and perform other functions prescribed by statute." At the time of the enactment of the Determinate Sentencing Act (Stats. 1976, ch. 1139), the Legislature directed the Judicial Council to "promote uniformity in sentencing" by the adoption of rules providing sentencing criteria. (§ 1170.3, subd. (a).) In response to that direction, the Judicial Council adopted Sentencing Rules for the Superior

---

[8]Since compulsory full term consecutive sentences are mandated for multiple offenses governed by subdivision (d) of section 667.6, the problem of dual use of facts both to aggravate and to enhance by a consecutive sentence never arises under that subdivision. Mandatory enhancements do not involve a sentence choice. There is therefore no requirement to state reasons when imposing a mandatory enhancement. (*People* v. *Stone* (1981) 117 Cal.App.3d 15, 20-21 [172 Cal.Rptr. 445]; *People* v. *Johnson* (1980) 104 Cal.App.3d 598, 611-612 [164 Cal.Rptr. 69].)

[9]The Advisory Committee's comment to that rule notes that ". . . under section 1170(b) and rule 405 (definitions), the additional term resulting from ordering sentences to be served consecutively is an 'enhancement.' "

Courts (rules 401-453), effective July 1, 1977.[10] Thus at the time of the effective date of section 667.6 on January 1, 1980, rule 441(c) had been an integral part of the new determinate law for two and a half years. Although the Legislature has the power to enact subsequently a statute which would have the effect of amending or repealing an existing rule (see *Stockton Theatres, Inc.* v. *Palermo* (1956) 47 Cal.2d 469, 476 [304 P.2d 7]), section 667.6 obviously does not expressly repeal rule 441(c) since it does not even allude to the dual use of facts prohibition. We must assume that the Legislature, when it enacted section 667.6, was aware of the existing statutes and rules governing sentencing and intended to maintain a consistent body of law. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) ▉ As the *Fuentes* court noted, "[r]epeals by implication are not favored, and are recognized only when there is no rational basis for harmonizing two potentially conflicting laws." (16 Cal.3d at p. 7.)

As we observed in *People* v. *Karsai, supra,* 131 Cal.App.3d at page 242, the provisions of subdivisions (c) and (d) of section 667.6 were ". . . directed at multiplicity of offenses by providing for full, separate, consecutive sentencing." ▉ Since the rule does not prohibit full term consecutive sentencing, there is no irreconcilable conflict between it and the statute. The sentencing court, as we shall explain, may impose as many consecutive sentences as the circumstances warrant; thus the statutory purpose of increasing the length of incarceration for violent sex offenses is not thwarted by the rule's prohibition against imposing the upper term and a consecutive

---

[10]The validity of those rules was recently upheld against a claim of an unconstitutional delegation of legislative power in *People* v. *Wright* (1982) 30 Cal.3d 705 [180 Cal.Rptr. 196, 639 P.2d 267]. As the Supreme Court there held, "[t]he fact that the grant of power to adopt 'rules' is limited to 'court administration, practice and procedure' does not mean that the Legislature may not grant to the council additional power to adopt rules, including rules governing substantive matters. This section [section 6 of article VI] is phrased in terms of a grant of power to the council, not limitation, and the concluding phrase is a general grant of power to the Legislature to authorize the council to perform additional functions. Because the express provision authorizing the council to adopt rules for court 'administration, practice and procedure' permits rule adoption without express legislative authorization, the quoted words should be read as limiting the council's power to act in the absence of legislative authorization, and not a limitation on the Legislature's general authority to confer power on state agencies expressly confirmed by the concluding phrase to 'perform other functions prescribed by statute.' [¶] The authority of the Legislature to grant to the council power to adopt rules in addition to those directly authorized by article VI, section 6 has been recognized in prior cases. Under section 6, the direct authorization to adopt procedural rules is limited to rules 'not inconsistent with statute,' and in *In re Marriage of McKim* (1972) 6 Cal.3d 673, 678, footnote 4 [100 Cal.Rptr. 140, 493 P.2d 868], the court recognized that the Legislature by adoption of statute had authorized the council to adopt rules superseding other statutes. [Citations.]" (*Id.,* at pp. 711-712.)

Since the Judicial Council was expressly authorized by the Legislature to adopt sentencing rules, for purposes of determining the effect of subsequent legislation we deem the rule 441(c) to be the equivalent of a statute.

sentence because of the same fact. Although the rule and the statute are not perfectly congruent, they are nevertheless reconcilable. ■ "Whenever possible, we must reconcile statutes and seek to avoid interpretations which would require us to ignore one statute or the other." (*California Teachers Assn.* v. *Los Angeles Community College Dist.* (1981) 123 Cal.App.3d 947, 954 [177 Cal.Rptr. 168].) ■ Rule 441(c) is therefore valid.

■ To the extent that the trial court relied upon the same fact in aggravation to impose both upper terms and consecutive terms, it violated the interdiction against dual use of facts. On remand, the trial court is directed to reweigh the circumstances in aggravation and the criteria for consecutive sentences and to comply with rule 441(c).

### 7. *Factors in Aggravation*

■ Defendant contends that the trial court relied upon a number of improper factors as factors in aggravation. In imposing sentence on the counts involving Sher, the trial court stated: "As I indicated, the evidence of the guilt of this particular defendant was indeed overwhelming. Particularly with respect to that victim, namely Sher . . . ." We agree with defendant, and the People concede, that the court may not consider the overwhelming nature of the evidence as a factor in aggravation. The People argue that the court's statement may be read as a simple introductory statement before sentencing. We need not consider whether the statement may be viewed in this light and considered harmless since we have determined that the matter must be remanded for resentencing. On remand the trial court shall not consider the weight of the evidence as an aggravating factor.

Defendant contends that the trial court erred in stating that the offenses against Sher involved threats of great bodily injury against Sher and her children. This statement was apparently taken from the probation officer's report which indicated that these threats were made. The record, however, does not support the statement that the victim's children were threatened. She testified that defendant told her that the "quicker you do what I want you to do the quicker you can go home to your kids," and that unless she did what he wanted she would never see her children again. She did not testify that defendant made threats of violence against the children. Accordingly, the trial court erred in stating that threats were made against the children.

■ We must also agree with defendant that the trial court erred in considering as a factor in aggravation that the offenses against Sher involved threats. Rule 441(d) precludes the use of an element of a crime as a factor in aggravation. The offenses of which defendant was convicted involve the

element of force or fear in their commission. (§§ 261, subd. 3; 288a, subd. (c).) It is true that the use of force or fear beyond that which is necessary for the accomplishment of the defendant's criminal purpose may be considered as a factor in aggravation. (*People* v. *Karsai, supra,* 131 Cal.App.3d at p. 239; *People* v. *Ramos* (1980) 106 Cal.App.3d 591, 602 [165 Cal.Rptr. 179].) The record here, however, fails to establish such excessive use of force or fear. Sher, by her own testimony, was an extremely submissive victim. Defendant was not required to use great force or fear against her, and he did not do so. Accordingly, it cannot be said that the offenses against Sher involved threats of great bodily injury in excess of those inherent in the offenses themselves.

We disagree with defendant, however, that the offenses against Stacia and Wilma did not involve threats and force in excess of that inherent in the crimes. In the Stacia offenses defendant choked the victim, threatened to break every bone in her body, and after completion of the offenses threatened to kill her if she reported the crimes. In the Wilma offenses defendant pulled her hair, choked her, continuously threatened to kill her, and struck her in the face. These offenses involved threats and violence in excess of those inherent in the crimes themselves.

With respect to the offenses involving Wilma the court stated that the crime "involved both great bodily harm which in fact occurred, but more importantly, threats of great bodily harm." Defendant contends that the evidence does not support the fact of great bodily harm. We disagree. Defendant struck Wilma with sufficient force to drive her tooth entirely through her lower lip. That is sufficient to support the finding in aggravation.

### 8. *Consecutive Sentences*

 Defendant finally contends that the trial court abused its discretion in imposing three full term consecutive sentences for the violent sex offenses. He submits that the choice to impose multiple full term consecutive sentences under section 667.6, subdivision (c), should require greater justification than the decision to impose the usual one-third of the middle term consecutive sentence under section 1170.1.

"The ideal method of proceeding," the Supreme Court noted in *Belmontes,* "would be for the trial court first to decide generally between concurrent and consecutive terms, following the criteria listed in rule 425. Once the court has decided to sentence a defendant to consecutive terms and has stated its reasons therefor, it then must decide whether the consecutive terms should be under the principal/subordinate scheme of section 1170.1 or under the full and separate term scheme of section 667.6, subdivision (c). If the

latter is chosen, the reasons therefor should be stated for the record. This decision, of course, should be made very carefully, for the Legislature obviously intended by the alternative language in section 667.6, subdivision (c) that this more punitive provision be reserved for the more serious sex offenders. (See *People* v. *Wilson, supra,* 135 Cal.App.3d 343, 353.)" (34 Cal.3d at pp. 348-349.)

 While there is a statutory presumption in favor of the middle term as the sentence for an offense (§ 1170, subd. (b)), there is no comparable statutory presumption in favor of concurrent rather than consecutive sentences for multiple offenses except where consecutive sentencing is statutorily required. The trial court is required to determine whether a sentence shall be consecutive or concurrent but is not required to presume in favor of concurrent sentencing. (§§ 669, 1170.1, subd. (a); rule 433(c)(3).) If it has faithfully applied the sentencing rules, the only other question is whether, all circumstances considered, the trial court's decision exceeds the bounds of reason. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65].) The record reveals numerous factors in aggravation, some cited by the trial court and some not, and no factors in mitigation. Defendant is a predatory criminal guilty of numerous aggravated offenses.[11] As such he may well be the kind of serious sex offender that the trial court might find deserving of the more punitive provisions of section 667.6, subdivision (c). Under such circumstances some type of severe prison sentence is virtually mandated. (See *People* v. *White* (1981) 117 Cal.App.3d 270, 282 [172 Cal.Rptr. 612].) Whether the trial court, on remand, should again elect to impose the more punitive consecutive sentence under section 667.6, subdivision (c), is for that court to decide. We merely hold that the imposition of some consecutive sentence in this case would not exceed the bounds of reason.

---

[11]Defendant's pattern of conduct graphically illustrates his criminal character. Defendant had a juvenile history of assaultive behavior. He was first committed to custody as an adult in 1953. Since that time he has been released from custody numerous times, but has spent remarkably little time free of custody without charges pending against him. His offenses include both assaultive and violent crimes as well as property crimes involving dishonesty. Defendant has frequently been charged with violent sex offenses. In 1960 he was initially booked for rape but ultimately was convicted of felonious assault. In 1968 he was charged with rape but was acquitted after a waitress testified that the victim was a well-known prostitute. Later in 1968 defendant was arrested for rape and robbery and, after a mistrial due to a hung jury, plea bargained to a conviction for battery. In 1975 defendant was convicted of rape and oral copulation. Defendant admitted giving the victim a ride but denied the sexual attack. Pursuant to his stipulation expert polygraph testimony was admitted which, in the opinion of the experts, showed defendant to be lying and the victim to be truthful. On appeal this court reversed the conviction because the trial court had failed, *sua sponte,* to instruct the jury that the expert opinion was not conclusive. (*People* v. *Reeder* (1976) 65 Cal.App.3d 235, 241 [135 Cal.Rptr. 421].) Defendant was thereafter released without a retrial.

### 9. *Selection of Principal Term*

 As we have noted, the trial court selected one of the 1980 offenses, punished under section 667.6, as the principal term. That designation, the Attorney General mistakenly claims, was erroneous and constituted an unauthorized sentence. The 1979 offenses, we have noted, were punishable only under section 1170.1 and not under section 667.6. The Attorney General therefore contends, under the "box theory" of sentencing assertedly established by section 667.6, the trial court was required to choose one of the pre-1980 offenses as the principal term under section 1170.1. Essentially this theory requires a trial court to impose sentence under section 1170.1 in one "box," and then to impose sentence under section 667.6 without regard to the section 1170.1 sentence in another "box." The total term is then computed by adding the result of the two "boxes" together.[12] (*People* v. *Ottombrino* (1981) 127 Cal.App.3d 574 [179 Cal.Rptr. 676]; *People* v. *Belasco* (1981) 125 Cal.App.3d 974, 983 [178 Cal.Rptr. 461].)

The mandatory box theory urged by the Attorney General was rejected in *Belmontes* and the decision in *People* v. *Ottombrino, supra,* 127 Cal.App.3d 574, disapproved to the extent it was inconsistent with that rejection. The *Belmontes* court held instead that the statutory scheme "gives the court the option to choose between sentencing under 1170.1 or section 667.6, subdivision (c)." (34 Cal.3d at p. 344.) Although the box theory is not mandatory, the trial court may in its discretion, choose to employ it. As the Supreme Court explained in *Belmontes,* at page 346: "if a defendant is convicted of both sex offenses and nonsex offenses, a trial court may properly designate the longest nonsex offense as the principal term and may treat all of the sex offenses under section 667.6, subdivision (c). [¶] In exercising its sentencing discretion, the court should make an individual determination as to each sex offense. Thus, a court could choose to have a sex offense serve as the principal term if it carried the longest sentence and to treat all other offenses—regardless of whether they include sex offenses listed in section 667.6, subdivision (c)—as subordinate terms under section 1170.1. A court could alternatively choose to treat some of the sex offenses under the principal/subordinate scheme of section 1170.1, while imposing fully consecutive sentences on others under section 667.6, subdivision (c). The computations under sections 1170.1 and 667.6, subdivision (c) are to be done separately; the total of the section 667.6 computation would then be added to the section 1170.1 total."

Since the Attorney General's argument is based upon the fallacious premise that the box theory of sentencing was mandatory, we necessarily reject it.

---

[12]For a complete description of the "box theory," see *People* v. *Ottombrino* (1981) 127 Cal.App.3d 574, 588, footnote 4 [179 Cal.Rptr. 676].

The judgment of conviction is affirmed as to all counts. The matter is remanded for resentencing in accordance with the views expressed in this opinion.

Blease, Acting P. J., and Carr, J., concurred.