[Nos. E001959, E001960. Fourth Dist., Div. Two. Aug. 14, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT LEE MARKS, JR., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Parts III and IV are not published; they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

**COUNSEL**

Howard C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Maxine P. Cutler and Gil P. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DORR, J.**\*—Defendant was charged by amended information with a series of robberies and related offenses in case number 22787.[2] Specifically, the information charged five counts of robbery (Pen. Code, § 211)[3] and one count each of auto theft (Veh. Code § 10851), attempted robbery (§§ 664/211), kidnapping for robbery (§ 209, subd. (b)), and assault with a firearm (§ 245, subd. (a)(2)). Enhancements for a prior serious felony conviction (§ 667), firearm use (§ 12022.5) as to all counts, and intentional infliction of great bodily injury (§ 12022.7) as to one robbery count were also charged. A jury trial ensued (Trial I); defendant was found guilty on all counts and all enhancements were found to be true.

In case number CR 22701, defendant was charged by amended information with two counts of residential burglary (§ 459), two counts of residential robbery (§ 211), two counts of sodomy (§ 286, subd. (c)), and one count of kidnapping for robbery (§ 209, subd. (b)). A prior serious felony enhancement (§ 667), and a firearm use enhancement (§ 12022.5) as to two

---

\*Assigned by the Chairperson of the Judicial Council.

[2]This appeal is a consolidation of two appeals: No. E001960, an appeal from case No. CR 22787; and No. E001959, an appeal from case No. CR 22701.

[3]All future code references are to the Penal Code unless otherwise indicated.

counts only, were also charged. The kidnapping charge and prior serious felony enhancement were dismissed before trial.

The residential burglary charges were tried separately from the other counts in case number CR 22701 (Trial II). A jury found defendant guilty of one count of burglary and one count of attempted burglary. The rest of the counts in case number CR 22701, two charges of residential robbery and two of sodomy, were then tried to a separate jury (Trial III). The jury returned verdicts of guilty on all charges and found the firearm use enhancement to be true.

The trial court imposed sentences for convictions in all three trials in a single sentencing hearing. Defendant received a total determinate sentence of 40 years and 4 months and an indeterminate life sentence for the kidnapping to run consecutively to the determinate sentence.

On appeal, defendant contends that (1) the trial court erred in refusing to allow 26 peremptory challenges in the kidnapping and robberies trial (Trial I); (2) defendant was improperly charged and convicted of two separate sodomies in Trial III, when only one sodomy actually occurred; (3) because only one sodomy occurred, the trial court erred in imposing a full term consecutive sentence for sodomy; and (4) the trial court erred in failing to give CALJIC instruction number 2.01 on use of circumstantial evidence sua sponte in both the robberies trial (Trial I) and the burglaries trial (Trial II).

## FACTS

The following is a brief account of the events leading up to defendant's arrest for the offenses of which he was convicted in the three trials described above. More detailed factual descriptions relevant to the issues raised on appeal will be included as needed in the discussion below.

On May 15, 1984, Ms. Doris Harris's home was burglarized and a burglary was also attempted at the home of her neighbor, Mr. Robert Dickson. Defendant was identified as the perpetrator by means of fingerprint evidence and was tried for these crimes in Trial II.

On the evening of August 5, 1984, Ms. Sharon Watson-Reed was robbed by a lone gunman when she and her children were leaving a business office they had just finished cleaning. The gunman took Ms. Watson-Reed's purse and then drove off in her car. Later on the same night a gunman drove up to Ms. Anna Obetz and Ms. Carolyn Morgan in a restaurant parking lot, took Ms. Obetz's purse from her by force and drove away. Ms. Obetz's checkbook was later found in Ms. Watson-Reed's car.

Still later on the same night (early morning hours of August 6, 1984), Mr. Kenneth Tennant was robbed by a man with a gun while working as a gas station attendant. The gunman then forced Mr. Tennant to drive him around in Mr. Tennant's car. Eventually they stopped at a drive-through restaurant where the gunman took cash drawers full of money from one of the employees and shot another. Sometime after this incident the gunman released Mr. Tennant.

On August 15, 1984, a man accosted Ms. Pam Shane in the parking lot of an ice cream store. The man forced Ms. Shane at gunpoint to walk in front of him into the store and act as his shield while he demanded cash from a store employee. A policeman approached the store at this moment and defendant ran out.

Defendant was identified as the assailant in all of the robberies and the kidnapping described above. He was tried for these offenses, a total of nine felony counts, in Trial I.

On the night of August 16, 1984, a man armed with a gun robbed Ms. Jean E. in her home and escaped driving her truck. On August 26, 1984, Ms. E. was again accosted in her home and robbed. The robber perpetrated two acts of sodomy on Ms. E. during the course of this robbery. Defendant was prosecuted for these crimes in Trial III.

DISCUSSION

I

DENIAL OF REQUEST FOR ADDITIONAL PEREMPTORY CHALLENGES

 Defendant contends that because Trial I included a kidnapping charge for which the punishment is life imprisonment with possibility of parole, he was entitled to 26 peremptory challenges instead of the 10 such challenges which he was allowed. He urges that judgment for all nine convictions in Trial I must be reversed because of this error.

Section 1070 provides in pertinent part that "[i]f the offense charged be punishable with death, or with imprisonment in the state prison for life, the defendant is entitled to 26 and the state to 26 peremptory challenges . . . . [o]n a trial for any other offense, the defendant is entitled to 10 and the state to 10 peremptory challenges." It is well established that section 1070 applies to offenses which carry a mandatory sentence of life imprisonment. (E.g., *People* v. *Yates* (1983) 34 Cal.3d 644, 648-649 [194 Cal.Rptr. 765, 669 P.2d 1]; *People* v. *Harris* (1882) 61 Cal. 136, 137.)

In the instant case, defendant was charged with kidnapping for robbery (§ 209, subd. (b)),[4] which requires imprisonment for life with the possibility of parole. Defendant was informed that he was entitled to only 10 peremptory challenges. His request for additional challenges was denied.[5] Defendant exercised the 10 peremptory challenges before the end of the empanelment procedure and his objection to the jury panel was recorded. Defendant contends, and the People concede, that he was entitled to 26 peremptory challenges in Trial I. We agree and conclude that the trial court erred in refusing to allow additional challenges upon defendant's request. Such error is reversible per se, precluding a harmless error analysis. (*People* v. *Armendariz* (1984) 37 Cal.3d 573, 584 [209 Cal.Rptr. 664, 693 P.2d 243]; *People* v. *Shaw* (1965) 237 Cal.App.2d 606, 611 [47 Cal.Rptr. 96]; see *People* v. *Riggins* (1910) 159 Cal. 113, 120 [112 P. 862].)

Defendant argues, without citing any authority, that the above-described error requires, not only the reversal of his kidnapping conviction, but also reversal of the eight other convictions in Trial I. Acceptance of defendant's argument would involve the probable retrial of eight serious felonies committed in four separate criminal incidents. We have been able to find no precedent requiring such drastic action in cases of reversal for failure to provide the proper number of peremptory challenges. On the contrary, in *People* v. *Smith* (1984) 35 Cal.3d 798 [201 Cal.Rptr. 311, 678 P.2d 886], our Supreme Court reversed a second degree murder conviction because of incorrect application of the felony-murder doctrine, but left intact convictions for felony child abuse and child beating arising from the same course of criminal conduct. The court also concluded that, because defendant was being tried for a crime carrying a life sentence, the lower court had erred in allowing her only 10 peremptory challenges instead of the 26 required by section 1070. (*Id.,* at p. 809.) It instructed the trial court to provide the parties with 26 such challenges should the homicide charge be retried. (*Ibid.*) Apparently, the Supreme Court did not perceive the other convictions to be tainted by the failure to provide the full complement of peremptory challenge required pursuant to the homicide charge.

Cases in which juries in capitol cases have been found to be tainted by exclusion of jurors having some objections to or doubts about the death penalty are also instructive on this issue. In *Witherspoon* v. *Illinois* (1968)

---

[4]Section 209, subdivision (b), provides: "Any person who kidnaps or carries away any individual to commit robbery shall be punished by imprisonment in the state prison for life with possibility of parole."

[5]Defendant's counsel apparently was unaware of the provisions of section 1070 and did not specifically ask for the full 26 challenges to which defendant was entitled. However, defendant did ask for "additional" challenges beyond the 10 which the trial was allowing him, and this request was denied.

391 U.S. 510, 516-519, [20 L.Ed.2d 776, 782-783 88 S.Ct. 1770], the Supreme Court held that a "'death qualified'" jury (chosen for its lack of opposition to the death penalty) lacked the impartiality required by the Constitution for its role in deciding upon the penalty for a capital crime. The court concluded, nevertheless, that defendant had not shown that a death qualified jury would be biased for purposes of determining the guilt of the defendant and reversed only the penalty phase of the conviction. (*Ibid.*) Thus, the court established that a jury unlawfully constituted for one purpose may be lawfully constituted for other purposes in the same case. Our California courts have followed *Witherspoon* in reversing only the penalty in death qualified cases. (E.g., *People* v. *Lanphear* (1980) 26 Cal.3d 814, 844 [163 Cal.Rptr. 601, 608 P.2d 809]; *People* v. *Velasquez* (1980) 26 Cal.3d 425, 445 [162 Cal.Rptr. 306, 606 P.2d 341]; *People* v. *Osuna* (1969) 70 Cal.2d 759, 768-769 [76 Cal.Rptr. 462, 452 P.2d 678].)

Given the above precedents, we can see no reason why a jury unlawfully impaneled for the purpose of trying a count which carries a life sentence should be adjudged lacking in the impartiality necessary for trial of other serious felony counts. We have been offered no proof that a jury improperly constituted for the purpose of trying a kidnapping charge would be more prone to find defendant guilty on other charges than any other jury impaneled pursuant to the 10 peremptory challenge limitation. Consequently, we hold that reversal is required herein only for defendant's conviction of kidnapping for robbery (§ 209, subd. (b)) in Trial I.

## II

### CONVICTION OF TWO COUNTS OF SODOMY

■ Defendant contends that he was erroneously convicted in Trial III of two separate sodomies (§ 286, subd. (c))[6] when in fact only one sodomy occurred. He argues that though two separate contacts occurred they were so close in time as to be part of the same single offense.

Consideration of this issue requires us to review the facts of the sodomy incident. Late one night defendant entered Ms. Jean E.'s home, accosted and robbed her, and moved her about the house by force. Eventually he pushed her into a spare room or junk room, shoved her head into a closet, lifted up her bathrobe and penetrated her anally for a "long time." Defendant

---

[6]Section 286, subdivision (c) provides in pertinent part: "Any person who participates in an act of sodomy with another person . . . when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim . . . shall be punished by imprisonment in the state prison for three, six or eight years."

then withdrew and forced Ms. E. to a box springs, located in another part of the room. He pushed her onto her knees on the box springs, covered her head with a couple of sleeping bags, and penetrated her anally once again. Each instance of penetration was painful.

In *People* v. *Perez* (1979) 23 Cal.3d 545, 549 [153 Cal.Rptr. 40, 591 P.2d 63], defendant attacked a woman in his apartment, committing three oral copulations, two acts of sexual intercourse, and one sodomy upon her within about forty-five minutes. Defendant contended that section 654,[7] which proscribes more than one punishment for the same act, prohibited punishment for each of these sex offenses because all of the offenses were "committed with the single intent and objective of obtaining sexual gratification." (*Id.*, at p. 550.) Our Supreme Court rejected this argument, stating that accepting such a broad definition of intent and objective in order "to preclude punishment for otherwise clearly separate offenses would violate the statute's [§ 654] purpose" of insuring that punishment of a defendant "will be commensurate with his culpability." (*Id.*, at p. 552.) The court concluded that one who attempts to obtain sexual gratification through commission of "a number of base criminal acts on his victim" is far more culpable than one committing only one such act. (*Id.*, at p. 553.) The court concluded by holding that because none of the offenses were done as a means to committing any of the others, facilitated the commission of any of the others, or was incidental to commission of any of the others, section 654 did not prohibit punishment for each sex offense which defendant committed on his victim. (*Id.*, at pp. 553-554.)

In *People* v. *Clem* (1980) 104 Cal.App.3d 337, 346 [163 Cal.Rptr. 553], defendant argued that five separate vaginal penetrations within about two hours constituted but one act of rape, because defendant had the single intent and objective of having sexual intercourse with his victim. The court, citing *Perez* and its antecedents, stated that "[i]t can no longer be argued that where there are multiple sexual acts performed upon a single victim, *albeit within a short space of time*, that each act does not comprise a distinct and separate violation and punishment." (*Ibid.*, italics added.) It then went on to define the "act" of rape: "rape is an *act* of sexual intercourse. Any sexual penetration, however slight, is sufficient to complete the crime." (*Id.*, at p. 347, original italics.) The court held that each of the penetrations of the victim must be viewed as "a separate act of rape," so that punishment for each such act was not the multiple punishment for a single act precluded by section 654. (*Ibid.*, see *People* v. *Vela* (1985) 172 Cal.App.3d 237, 243

---

[7]Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished by either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

[218 Cal.Rptr. 161]; *People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 791 [190 Cal.Rptr. 554].)

When we apply *Perez* and *Clem* to the case at bench, it becomes clear that defendant committed not one, but two sex offenses, each of which is separately punishable pursuant to section 654. Defendant placed his penis in contact with Ms. E.'s anus twice (each time achieving a penetration painful to the victim), thus completing two separate acts of sodomy. (See *People* v. *Clem, supra,* 104 Cal.App.3d at p. 347.) That the two contacts were within a short time of each other does not alter the fact that they were separate and distinct acts. (*Id.,* at p. 346.)[8] Neither of the acts was the means of achieving the other, facilitated commission of the other, or was incidental to the other. (*People* v. *Perez, supra,* 23 Cal.3d at pp. 553-554.) Defendant, who caused his victim to undergo two separate humiliating and painful violations of her body, was more culpable in committing the two acts of sodomy than if he had committed only one. (*Id.,* at p. 553.)

Defendant argues that *People* v. *McIntyre* (1981) 115 Cal.App.3d 899 [176 Cal.Rptr. 3], requires reversal of one of his sodomy convictions. *McIntyre,* however, does not involve the question of whether or not defendant has received double punishment for a single offense. In *McIntyre,* there was evidence that defendant forced his victim to copulate him orally, raped her, then forced her to copulate him orally once again, all within a few minutes' time. (*Id.,* at pp. 904, 910.) Defendant was charged with and convicted of one count of rape and one of forced oral copulation. (*Id.,* at p. 903.) On appeal defendant contended that the trial court erring in failing to give CALJIC No. 17.01, which instructs that to find a person guilty of an act, "all the jurors must agree that he committed the same act or acts." (*Id.,* at pp. 907-908.) The court concluded that the omitted instruction was not necessary because the two oral copulations occurred within the same brief sexual attack and need not be viewed as separate crimes. (*Id.,* at p. 910.)

*McIntyre* has been approved in other cases involving a CALJIC No. 17.01 issue. (E.g., *People* v. *Moore* (1983) 143 Cal.App.3d 1059, 1065 [192

---

[8]Defendant's argument that the "interruption" between the two contacts and penetrations was so brief as to render them part of one act is fully answered by the discussion of acts of rape in *Clem. (Id.,* at p. 347.) Nevertheless, it is worth reiterating that during the "interruption" defendant let go of Ms. E.'s bathrobe, moved her to another part of the room, forced her to her knees, covered her head with sleeping bags, and again lifted her bathrobe. To seek to characterize this incident as one sexual offense is to ignore the obvious fact that shoving Ms. E. around the room, repositioning her, and covering her head (she had great difficulty breathing) constituted a series of brutal acts separating two forced acts of contact and painful penetration. It is difficult to see how this course of events can be likened, as defendant tries to do, to a cough during sexual intercourse or a pause to apply a lubricant.

Cal.Rptr. 374]; *People* v. *Epps* (1981) 122 Cal.App.3d 691, 702-703.) In *People* v. *Reeder* (1984) 152 Cal.App.3d 900 [200 Cal.Rptr. 479], the court refused to extend *McIntyre* to a double punishment (§ 654) issue, reasoning that "[t]o do so would be to hold that once a criminal has committed one particular sexual crime against a victim he may thereafter with impunity repeat his offense so long as he does so on the same occasion. Such a result would be contrary to the purpose of section 654 and the holding of *Perez* . . . ." (*Id.*, at p. 917.) The court then reviewed the facts—that defendant raped the victim and then forced her to copulate him orally, gave her a cigarette, then raped her and forced her to copulate him orally once again— and concluded that defendant could properly be punished for each of the four sexual offenses. (*Ibid.*) We agree with the reasoning in *Reeder* and conclude that there was no error in prosecuting, convicting, and punishing defendant for two separate acts of sodomy in the instant case.

■ Defendant also argues that the trial court erred in not instructing the jury sua sponte that they would need to consider whether the length of time between the first contact and the second was or was not sufficient to render the two contacts part of the same criminal offense. He cites as his authority *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1], which requires that the trial court instruct the jury on the general principles of law which govern the case; i.e., "'those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 . . . .)" It is not, however, a principle of our law that the proximity in time of sexual contacts or penetrations determine whether or not they are separate offenses. According to the *Perez-Clem-Reeder* line of cases, each contact or penetration forms a separate and distinct offense. Consequently, the trial court did not err in failing to instruct the jury as defendant is urging.

III, IV*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment in Trial I, superior court case number 22787, appellate case number E001960, is reversed as to the kidnapping for robbery count (count V) only and affirmed in all other respects. The case is remanded to

---

*See footnote 1, *ante,* page 458.

the superior court for further action on count V; the sentences otherwise remain in effect. The judgments in Trials II and III, superior court case number 22701, appellate case number E001959, are affirmed.

Rickles, Acting P. J., and McDaniel, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 4, 1986.