[No. A127163. First Dist., Div. Five. July 21, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE ANTON CLAIR, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

## Counsel

Robert Bryzman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Alisha M. Carlile, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JONES, P. J.**—A jury convicted appellant George Anton Clair of 46 felony counts, including committing lewd and lascivious acts with his daughter, Jane Doe, a child under 14 years (Pen. Code, § 288, subd. (a) (counts 2–6)),[1] felony child endangerment (§ 273a, subd. (a) (count 9)) and distribution of child pornography (§ 311.2, subd. (c) (counts 27–45)). The trial court sentenced appellant to state prison.

Appellant raises three claims on appeal. First, he contends there was insufficient evidence he endangered Doe under circumstances or conditions "likely to cause great bodily harm or death" pursuant to section 273a, subdivision (a) (count 9). Next, appellant claims the court should have stayed execution of sentence pursuant to section 654 on three convictions for committing a lewd and lascivious act on Doe in violation of section 288, subdivision (a) (counts 2–6). Finally, he claims the court was required by section 654 to stay execution of sentence on four convictions for distributing child pornography in violation of section 311.2, subdivision (c) (counts 28, 30, 40 & 42) because "[t]he transmission of multiple emails in rapid succession to a single recipient constitutes an indivisible course of conduct with the single purpose of distributing the prohibited material to one individual."

We affirm. In the published portion of this opinion, we reject appellant's challenge to the sufficiency of the evidence to support the section 273a, subdivision (a) conviction (count 9). We also conclude section 654 does not require the court to stay execution of sentence on counts 28, 30, 40, and 42 because appellant distributed different images of child pornography at different times and with different objectives. In the unpublished portion, we reject appellant's claim that the court should have stayed execution of sentence on some of his section 288, subdivision (a) convictions (counts 2–6) pursuant to section 654.

## FACTUAL AND PROCEDURAL BACKGROUND

In an amended information filed on October 20, 2009, the prosecution charged appellant with 46 felony counts: oral copulation of a child under 10 years (§ 288.7, subd. (b) (count 1)); lewd and lascivious conduct on a child under 14 years (§ 288, subd. (a) (counts 2–6)); sexual penetration of a child under 14 years (§ 289, subd. (j) (counts 7–8)); felony child endangerment (§ 273a, subd. (a) (count 9)); inducing a child to pose or model sexual conduct (§ 311.4, subd. (c) (counts 10–25)); unlawful possession of child

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

pornography (§ 311.11, subd. (a) (count 26)); distribution of child pornography (§ 311.2, subd. (c) (counts 27–45)); and conspiracy to obstruct justice (§ 182, subd. (a)(5) (count 46)).

*Prosecution Evidence*

We begin with an overview of the facts. We will provide additional factual and procedural details as germane to appellant's specific claims.

Appellant's daughter, Doe, was born in 1999. From 2003 to 2008, appellant worked as a tow truck driver in Cotati, California. He lived with Doe in a trailer on the tow yard. In 2008, Cotati Police Officer Christopher Diaz discovered child pornography sent from several different AOL screen names associated with appellant's AOL account. Diaz searched appellant's trailer and found a digital camera, a memory card, two computer towers, and an external hard drive.

Diaz downloaded photographs from the camera. Many of the photographs—which appeared to have been taken in appellant's trailer—showed Doe posing or touching herself in a sexual manner. In some photographs, Doe was wearing a black nightgown; in others, appellant was wearing his underwear. On the memory card, Diaz found images of naked boys. A detective from the Vallejo Police Department examined the external hard drive found in the trailer and discovered 448 images of child pornography dated between September 2006 and April 2008. Some of the images were of Doe. The detective found 212 images of child pornography on one of the computer towers, some of which showed Doe orally copulating a man wearing an orange jumpsuit. Other photographs showed Doe penetrating herself with dildos. In addition, the detective found numerous e-mails sent from screen names associated with appellant's AOL account; the e-mails attached images of child pornography. Diaz later found an orange jumpsuit in appellant's trailer.

At the time of trial in 2009, Doe was 10 years old but had the developmental capabilities of a four or five year old. She testified she lived with appellant in a trailer, that he was a tow truck driver, and that he sometimes wore orange clothing. Appellant took pictures of Doe without clothes and pictures of her wearing a black nightgown. He also took pictures of her "peep"—the word Doe used to describe male and female genitalia—and used his hands to pull her head down and put her mouth on his "peep." Doe saw appellant ejaculate. She said it was "scary" to see appellant's "peep," and that it made her feel "not happy" when he put his "peep" in her mouth. She also stated appellant was "mean" to her and that she felt like she was keeping a "bad secret." Marlene Hansel, who volunteered in Doe's special needs classroom, testified

Doe was happy and "very friendly" in 2005; in 2006, however, Doe became "less affectionate" and "very distant."

*Defense Evidence*

Appellant denied taking photographs of Doe or e-mailing child pornography. Appellant claimed his friend, John Christiansen, took the photographs and that Christiansen knew his computer and Internet passwords. Appellant also denied forcing Doe to orally copulate him or to use sex toys on herself and testified Doe lied when she claimed he forced her to orally copulate him.

*Verdict and Sentencing*

On October 30, 2009, the jury convicted appellant of 46 felony counts. In December 2009, the court sentenced appellant to an aggregate term of 59 years to life in state prison. The court stayed execution of sentence on appellant's convictions for felony child endangerment (§ 273a, subd. (a) (count 9)) and unlawful possession of child pornography (§ 311.11, subd. (a) (count 26)). The court imposed consecutive sentences on appellant's section 288, subdivision (a) convictions (counts 2–6) and his section 311.2, subdivision (c) convictions (counts 27–45).

DISCUSSION

*I.*

*Sufficient Evidence Supports Appellant's Conviction for
Violating Section 273a*

Section 273a, subdivision (a) provides in relevant part, "[a]ny person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished . . . ." (§ 273a, subd. (a).) "For a defendant to be guilty of violating section 273a, subdivision (a), his conduct must be willful and it must be committed under circumstances 'likely to produce great bodily harm or death.' [Citation.] 'Great bodily harm refers to significant or substantial injury and does not refer to trivial or insignificant injury.' [Citation.]" (*People v. Cortes* (1999) 71 Cal.App.4th 62, 80 [83 Cal.Rptr.2d 519].) "The statute is intended to protect

a child from an abusive situation in which the probability of serious injury is great." (*People v. Jaramillo* (1979) 98 Cal.App.3d 830, 835 [159 Cal.Rptr. 771].)

Appellant contends his conviction for violating section 273a, subdivision (a) must be reversed because there was insufficient evidence he engaged in any conduct "likely to result in great bodily harm or death." We "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Lewis* (1990) 50 Cal.3d 262, 277 [266 Cal.Rptr. 834, 786 P.2d 892].)

*People v. Sargent* (1999) 19 Cal.4th 1206, 1221 [81 Cal.Rptr.2d 835, 970 P.2d 409] (*Sargent*), where the California Supreme Court held that a general criminal intent applies to section 273a, is instructive. (*Sargent, supra,* 19 Cal.4th at pp. 1216, 1224.) In *Sargent,* a jury convicted the defendant of violating section 273a, former subdivision (1) (now subd. (a)). (*Sargent, supra,* 19 Cal.4th at p. 1224.) The court explained, "the statute proscribes the infliction of unjustifiable physical pain or mental suffering on a child. Whether that infliction is 'under circumstances or conditions likely to produce great bodily harm or death' is a question for the trier of fact. In this case for example, the jury reasonably would have considered [the victim]'s tender age and fragile physical development, the degree of force used by defendant in violently shaking him on two different occasions, and the likelihood of great bodily harm or death created by that force as evidenced by the medical testimony and the injuries sustained. By contrast, if [the victim] had been a 17-year-old varsity linebacker, those facts would also have been 'circumstances or conditions' the jury would consider." (*Id.* at p. 1221.)

■ Here, there is sufficient evidence to support the conviction. The jury had before it numerous photographs depicting acts of sexual abuse against Doe. In many of the photographs, Doe—who was nine years old when the pictures were taken—is penetrating herself with two different large dildos resembling adult male penises; in others, appellant is penetrating Doe with a dildo. Given Doe's "tender age and fragile physical development," the jury could have reasonably inferred that the manner of the abuse created a risk of serious injury to Doe's vagina and urogenital tract. (See *Sargent, supra,* 19 Cal.4th at p. 1221; *People v. Williams* (1981) 115 Cal.App.3d 446, 454 [171 Cal.Rptr. 401] [genital tearing, trauma, and pain caused during rape].) That there was "no evidence that Doe suffered any physical injury" is irrelevant.

There is no requirement that a victim suffer actual injury or harm to support a conviction for violating section 273a, subdivision (a). (*People v. Cockburn* (2003) 109 Cal.App.4th 1151, 1160 [135 Cal.Rptr.2d 807]; *People v. Valdez* (2002) 27 Cal.4th 778, 784 [118 Cal.Rptr.2d 3, 42 P.3d 511].) Viewing—as we must—the evidence in a light most favorable to the verdict, we conclude a jury could reasonably determine appellant abused Doe under "circumstances or conditions likely to produce great bodily harm . . . ." (§ 273a, subd. (a).)

Appellant relies on *People v. Duke* (1985) 174 Cal.App.3d 296, 303 [219 Cal.Rptr. 873] (*Duke*), where the appellate court reversed the defendant's conviction for assault with force likely to produce great bodily injury in violation of section 245, subdivision (a)(1). (*Duke, supra,* 174 Cal.App.3d at pp. 299, 302.) The *Duke* court explained, "We conclude that a reasonable jury could not find beyond a reasonable doubt that the headlock used on [the victim] constituted force likely to produce great bodily injury. Appellant only grabbed her momentarily and released her almost immediately. She was in no danger from the force actually exerted on her body. Appellant clearly could have exerted force likely to produce great bodily injury; however, what counts is the force actually exerted, not the threat presented by the defendant's size and strength." (*Id.* at p. 303.)

Appellant's reliance on *Duke* is unavailing. In *Duke*, the court considered the amount of force the defendant "actually exerted" pursuant to section 245. (*Duke, supra,* 174 Cal.App.3d at p. 303.) In contrast, the inquiry here is whether appellant abused Doe under "circumstances or conditions *likely* to produce great bodily harm or death." (§ 273a, subd. (a), italics added.) The force appellant used to penetrate Doe with the dildos is one factor of several the jury could have considered in rendering its verdict. Therefore, the *Duke* court's analysis of the force the defendant used in that case does not alter our conclusion.

Finally, we reject appellant's claim that there was insufficient evidence to support the conviction because no expert opined that his conduct was likely to result in great bodily harm or death. Expert testimony is not necessary to prove that the abuse was likely to cause great bodily harm. (See, e.g., *People v. Harris* (1966) 239 Cal.App.2d 393, 398 [48 Cal.Rptr. 677] [expert testimony not necessary to prove squalid conditions likely to injure health of children].) A jury could infer that appellant abused Doe under conditions or circumstances likely to cause great bodily injury based on Doe's age, physical development, and the large size of the dildos appellant used to penetrate Doe's vagina.

*II.*

### Section 654 Did Not Require the Court to Stay Any of Appellant's Convictions for Violating Section 288, Subdivision (a)*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*III.*

### Section 654 Did Not Require the Court to Stay Any of Appellant's Convictions for Violating Section 311.2, Subdivision (c)

■ The jury convicted appellant of 19 counts of distributing child pornography in violation of section 311.2, subdivision (c) (counts 27–45), which makes it a crime to knowingly distribute to a person 18 years of age or older any materials "depict[ing] a person under the age of 18 years personally engaging in or personally simulating sexual conduct, as defined in Section 311.4." (§ 311.2, subd. (c); see also 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Sex Offenses and Crimes Against Decency, § 90, p. 398; *id.*, (2011 supp.) § 90, pp. 145–146.) To establish a violation of section 311.2, subdivision (c), the prosecution must prove the defendant (1) distributed the materials to another person; (2) knew the character of the materials; and (3) knew the materials showed a person under the age of 18 years who was personally participating in or simulating sexual conduct. (CALCRIM No. 1141.) The court declined to stay appellant's sentence on these convictions, explaining that the "[d]issemination of pornography by email in Counts [27] through [45] did occur at different times" and that appellant harbored "different criminal objectives and different criminal intent" each time he distributed the child pornography.

*Counts 27 and 28*

At 11:03 p.m. on May 29, 2008, appellant sent an e-mail attaching six images of child pornography to "j.marty23" (count 28).[4] Ten minutes later, at 11:13 p.m., appellant sent another e-mail—attaching 12 different pornographic images—to "j.marty23" (count 27).

---

*See footnote, *ante*, page 949.

[4] We refer to each recipient using only a portion of his or her e-mail address. The prosecution charged many of the counts in reverse temporal order.

*Counts 29 and 30*

At 12:26 a.m. on May 30, 2008, appellant sent an e-mail to "elentramier." The e-mail to "elentramier" contained the subject line, "Re: a cute girl kool [*sic*] no have not touch she touch me" and attached 12 images of child pornography (count 30). Approximately 20 minutes later, at 12:45 a.m., appellant sent another e-mail to "elentramier" attaching 12 different images of child pornography (count 29).

*Counts 39 and 40*

At 8:06 p.m., appellant sent an e-mail to "Genaealogi" attaching 12 images of child pornography (count 40). Almost three hours later, at 10:44 p.m., appellant again e-mailed "Genaealogi," with the subject line "TRIBUTS." To this e-mail, appellant attached 16 different pornographic images (count 39).

*Counts 41 and 42*

At 6:15 p.m. on April 14, 2008, appellant e-mailed 32 images of child pornography to "jeffr111" (count 42). Over an hour later, at 7:25 p.m., appellant sent another e-mail to "jeffr111" attaching nine different images (count 41).

Appellant's final argument is the court should have stayed execution of sentence on counts 28, 30, 40, and 42 pursuant to section 654 because the "transmission of multiple e-mails in rapid succession to a single recipient constitutes an indivisible course of conduct with the single purpose of distributing the prohibited material to one individual."[5] Specifically, appellant contends execution of sentence on counts 28, 30, 40 and 42 must be stayed because he sent an e-mail to the same recipient shortly before or after sending a second e-mail forming the basis of these convictions.

■ Section 654 provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (§ 654, subd. (a).) "Although section 654 speaks in terms of an 'act or omission,' it has been judicially interpreted to include situations in which several offenses are committed

---

[5] At various points in his opening and reply briefs, appellant contends the court erred by imposing consecutive sentences on counts 28, 30, 40, and 42. Appellant also claims, however, that "punishment must be stayed under section 654 with regard to *five* of the section 311.2 convictions." (Italics added.) We assume this is a typographical error.

during a course of conduct deemed indivisible in time. [Citation.] The key inquiry is whether the objective and intent attending more than one crime committed during a continuous course of conduct was the same. [Citation.] '[I]f all of the offenses were merely incident to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.] [¶] If, on the other hand, defendant harbored "multiple criminal objectives," which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, "even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." ' [Citation.]" (*People v. Meeks* (2004) 123 Cal.App.4th 695, 704 [20 Cal.Rptr.3d 445] (*Meeks*); see also *People v. Kwok* (1998) 63 Cal.App.4th 1236, 1252 [75 Cal.Rptr.2d 40].) "Whether the acts of which a defendant has been convicted constitute an indivisible course of conduct is a question of fact for the trial court, and the trial court's findings will not be disturbed on appeal if they are supported by substantial evidence. [Citations.]" (*Kwok*, at pp. 1252–1253.)

Appellant repeatedly contends the court should have stayed punishment for the convictions on counts 28, 30, 40, and 42 because he sent two e-mails to each of several recipients "in rapid succession" in each pair of counts. To adopt such an approach would mean that once a defendant sends an e-mail containing images of child pornography, " 'he may thereafter with impunity repeat his offense . . .' " as long as he e-mails other pornographic images to the same recipient, or to another recipient, without significant delay. (*People v. Harrison* (1989) 48 Cal.3d 321, 337 [256 Cal.Rptr. 401, 768 P.2d 1078] (*Harrison*), quoting *People v. Reeder* (1984) 152 Cal.App.3d 900, 917 [200 Cal.Rptr. 479].) "[N]o special treatment is to be afforded to a defendant under section 654 simply because he chose to repeat, rather than to diversify or alternate, his many crimes. [Citations.]" (*Harrison, supra,* 48 Cal.3d at p. 337.)

As our high court has explained, "[i]t is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.]" (*Harrison, supra,* 48 Cal.3d at p. 335.) When the trial court imposed consecutive sentences on counts 28, 30, 40, and 42, it determined appellant entertained different objectives with respect to these convictions. Substantial evidence supports the court's determination. (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935 [97 Cal.Rptr.2d 392] (*Gaio*).) When he sent each e-mail, appellant " 'harbored . . . separate criminal objectives which were independent and not merely incidental to each other.' " (*People v. Davey* (2005) 133 Cal.App.4th 384, 393 [34 Cal.Rptr.3d 811] (*Davey*), quoting *People v. McCoy* (1992) 9 Cal.App.4th 1578, 1586 [12 Cal.Rptr.2d 476].)

 Even if we assume for the sake of argument that appellant sent the e-mails described above with a "single generalized intent and objective . . . separate sentencing was still permissible." (*Gaio, supra*, 81 Cal.App.4th at p. 935.) As the *Gaio* court explained, "[u]nder section 654, 'a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment. [Citations.]' [Citations.] This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken. [Citation.]" (*Gaio, supra*, 81 Cal.App.4th at p. 935.)

The e-mails to "j.marty23" were sent 10 minutes apart. The e-mails to "elentramier" were sent 20 minutes apart. The e-mails to "Genaealogi" were separated by almost three hours, and the e-mails to "jeffr111" were sent over an hour apart. The temporal separation of the e-mails allowed appellant an "opportunity to 'reflect' on [his] conduct and then 'renew' [his] intent to commit yet another crime." (*People v. Andra* (2007) 156 Cal.App.4th 638, 642 [67 Cal.Rptr.3d 439], quoting *Gaio, supra*, 81 Cal.App.4th at p. 935.)

Appellant relies on two cases, neither of which assists him, *People v. Jimenez* (1992) 11 Cal.App.4th 1611, 1624 [15 Cal.Rptr.2d 268],[6] and *People v. Bauer* (1969) 1 Cal.3d 368, 376–377 [82 Cal.Rptr. 357, 461 P.2d 637] (*Bauer*). In *Jimenez*, a jury convicted the defendant of two counts of perjury based on two untrue statements he made at an earlier trial. (*Jimenez, supra*, 11 Cal.App.4th at p. 1623.) The appellate court held that section 654 precluded punishment for both convictions because the defendant had only one "criminal objective[:] . . . to exonerate himself on the three offenses for which he was being tried . . . ." (*Jimenez, supra*, 11 Cal.App.4th at p. 1624.) *Jimenez* explained that the defendant's denials were "not *independent* but instead merely *supportive* of [his] earlier alibi testimony. Since defendant's two statements did not have separate criminal objectives, the concurrent term [must be] imposed for the second perjury count . . . ." (*Id.* at p. 1625.) Here and in contrast to *Jimenez*, appellant's e-mails—even the ones sent to the same recipient—were not "supportive" of each other, nor were they related to each other. Each e-mail attached different images and was separate and distinguishable from the other e-mails; appellant did not send one e-mail to gauge whether the recipient was receptive to receiving additional images.

Nor are we persuaded by appellant's reliance on *Bauer, supra*, 1 Cal.3d at pages 376–377, where our high court held that "the taking of several items during the course of a robbery may not be used to furnish the basis for

---

[6] *People v. Kobrin* (1995) 11 Cal.4th 416, 419 [45 Cal.Rptr.2d 895, 903 P.2d 1027], disapproved *People v. Jimenez, supra*, 11 Cal.App.4th 1611 on another ground.

separate sentences." There, the *Bauer* court explained, "where a defendant robs his victim in one continuous transaction of several items of property, punishment for robbery on the basis of the taking of one of the items and other crimes on the basis of the taking of the other items is not permissible." This case does not concern the taking of property during a robbery, nor does it concern a "continuous transaction." (*Id.* at p. 377.) It concerns the discrete and separate acts of e-mailing child pornography. As a result, *Bauer* does not assist appellant.

The parties have not cited, and we have not found, any California authority concerning the applicability of section 654 to multiple counts of distributing child pornography. Our conclusion, however, is consistent with a line of cases holding that a trial court may impose consecutive sentences for multiple different sex offenses committed against the same victim within a short period of time (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63] (*Perez*)) and with cases holding that a defendant may be convicted of multiple counts of the same sex crime despite the close proximity and similar nature of the underlying acts. (*Harrison, supra,* 48 Cal.3d at p. 329; see also *People v. Jimenez* (2002) 99 Cal.App.4th 450, 453–456 [121 Cal.Rptr.2d 426] [defendant who fondled several separate portions of the victim's body was properly convicted of several counts of child molestation in violation of § 288]; see .also *Meeks, supra,* 123 Cal.App.4th at p. 706 [defendant's failure to register his change of address and failure to register on his birthday in violation of former § 290 were "separate triggering events giving rise to separate offenses"].)

The section 654 issue here is unlike the circumstances present in *Davey, supra,* 133 Cal.App.4th at page 387, where Division Two of this court held that "a single act of indecent exposure constitutes only one crime for the purpose of sentencing, regardless of the number of people who witness it." (*Ibid.*) Here and in contrast to *Davey,* appellant composed separate e-mails, typed the recipient's e-mail address, selected various images of child pornography from the hundreds on his computer, and attached those specific images to each e-mail. Even where appellant e-mailed the same recipient more than once, he attached different images to each e-mail. Appellant does not argue—and there is no indication in the record to support such an argument—that he inadvertently sent two e-mails to the same recipient.

■ Declining to punish appellant for each act of distributing child pornography would violate the purpose of section 654, which " 'is to insure that a defendant's punishment will be commensurate with his culpability.' " (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211 [23 Cal.Rptr.2d 144, 858 P.2d 611], quoting *Perez, supra,* 23 Cal.3d at p. 551.) A defendant who repeatedly distributes hundreds of different images of child pornography is surely more

culpable than a defendant who distributes such child pornography on one occasion. Therefore, "[s]ection 654 does not prohibit the multiple punishments imposed in this case" and the court did not err by imposing consecutive sentences on counts 28, 30, 40, and 42. (*Meeks, supra*, 123 Cal.App.4th at p. 706; see *Harrison, supra*, 48 Cal.3d at p. 336.)

## DISPOSITION

The judgment is affirmed.

Simons, J., and Needham, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 16, 2011, S196086.