Filed 6/9/15  P. v. Paredes CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060788 |
| v. | (Super.Ct.No. RIF1305910) |
| CARLOS ALONSO PAREDES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Rafael A. Arreola, Judge. (Retired Judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Carlos Alonso Paredes was sentenced to prison after being convicted of robbery (Pen. Code, § 211)[1], intimidation of a witness (§ 136.1), assault likely to cause great bodily injury (§ 245, subd. (a)(4)), and battery causing great bodily injury.  (§ 243, subd. (d).)  The jury also found true that defendant inflicted great bodily injury on the victim.  (§12022.7, subd. (a).)[2]  He appeals, arguing that the imposition of separate sentences for the robbery and dissuasion convictions violated section 654, and that the trial court abused its discretion in declining to place him on probation.  We disagree and affirm the judgment.

STATEMENT OF FACTS

On April 28, 2013, Efren Garcia heard a noise near his apartment building and went to investigate.  He saw a man with a black hat and discovered that his car had been opened and items stolen, including a vacuum and toolbox.[3]  Garcia called police as the man with a black hat and his companions loaded his property onto a dolly.  He had previously seen the thieves gathered around his building or in the area.

---

[1]  All subsequent statutory references are to the Penal Code.

[2]  The jury also made a true finding that the crimes were committed while defendant was out on bail.  (§ 12022.1.)  However, this finding was by agreement stricken because the statute requires that the defendant have been on bail for a felony, and defendant eventually pleaded guilty to a misdemeanor in the earlier case (the car burglary discussed below).  The probation officer's report shows the misdemeanor conviction under section 496, subdivision (a) (receiving stolen property), was dated May 10, 2013—the day *before* the assault on the victim.  It is therefore unclear whether he was still out on bail or had been released to probation.

[3]  Garcia was essentially homeless and often lived in his van.

Officer Christi Arnold of the Riverside Police Department testified that on April 28, 2013, she responded to a reported vehicle burglary. On arrival, Garcia directed Officer Arnold and her partner to the rear of the building and then pointed at three subjects with a dolly full of property. The man pushing the dolly was defendant. At the time, Garcia approached within a few feet of defendant as he identified his property; this scene lasted several minutes as the reporting officers tried to sort matters out. Officer Arnold testified further that defendant told her he was just holding the property for a friend and admitted that he thought it might be stolen. Eventually defendant and another man were taken into custody.

Garcia further testified that on May 11, 2013, he was walking to a grocery store when one of the thieves and another man approached him. The other man asked Garcia why he was "pointing the blame at him?" The man who had been pulling the dolly at the time of the theft then struck Garcia in the face three times, knocking him down. When Garcia was able to stand he realized that his necklace was missing and one of the assailants appeared to have it in his hand. As they departed, one of the men threatened him with language similar to "you'll see what's going to happen."[4]

As a result of the attack, Garcia's nose was broken and a crown on one tooth was damaged.

---

[4] It will be noted that Garcia at trial persistently refrained from identifying defendant as having been involved in either incident.

The prosecutor then asked Garcia about his photo identification of the person who hit him. Garcia testified that he "wasn't sure" it was the perpetrator and that "I don't remember too well because I've never seen him that close." He also claimed that the same two men who had accosted him on May 11 had approached him that morning on his way to court, again making threatening comments. He insisted that the person shown in Exhibit 3 (presumably a photograph of defendant) was not involved in either the original theft or the threats and assault incident and specifically he had never seen defendant before in his life.[5]

On re-direct, after confirming to defense counsel that defendant was not his assailant, Garcia admitted that he was frightened of what would happen if he identified defendant as the perpetrator.

The next witness was Officer Neely Nakamura, a fluent Spanish speaker who had been dispatched to assist when Garcia called police after being assaulted on May 11. She found Garcia bleeding from the nose and mouth and was able to observe that his shirt was torn at the neck and that there was a slight scratch mark on his neck.[6]

---

[5] Garcia was clearly reluctant to testify and, as relayed through an interpreter, his testimony was evasive, inconsistent and difficult to follow.

[6] Garcia was wearing a sleeveless tank top described by Officer Nakamura initially as a "wife beater[]."

Officer Nakamura testified that Garcia told her that the same persons that had been arrested for the car burglary were the ones that had attacked him. He told her that after he was punched, his necklace was yanked off. Garcia also reported the threats and questions about why he was dealing with police and being told that the attack was "what you get for getting involved."

Officer Nakamura later met with Garcia again and showed him photographs of the two men arrested for the car burglary, one of which depicted defendant. Garcia—who also reported to her that he had previously been familiar with, but not friendly with, a group of young men hanging out in the neighborhood that included defendant—immediately identified defendant as the man who punched and threatened him. Garcia expressed no doubt or equivocation about his identification.

Following the return of the jury's verdict as set out above, the matter was continued for sentencing. The probation report reflected that defendant, then 25 years old, had no juvenile record and no adult record other than driving offenses. He had worked at various construction jobs and at the time of the offenses was working part-time at an athletic field concession stand. However, defendant also expressed the view that he should not have been convicted once the victim refused to identify him. Furthermore, with respect to the car burglary, defendant told the probation officer that he was helping

5

his cousin move and " 'some guy' " offered him $5 to help *him* move.[7] The recommendation was that defendant be placed on probation.

The probation officer did note that defendant was *ineligible* unless the court could find an unusual case. (§ 1203, subd. (e)(3) [any person who has inflicted great bodily injury].) However, the probation officer believed that defendant qualified as an *unusual case* under California Rules of Court, rule 4.413(c)(2)(c), "[t]he defendant is youthful or aged, and has no significant record of prior criminal offenses."

At the sentencing hearing, the court remarked that it was concerned that defendant was not taking responsibility for his acts and was in fact casting himself as a victim. It also noted that (despite his lack of prior record), he had committed the current offenses immediately following the car burglary. It acknowledged that, at the age of 25, defendant could probably qualify for treatment as an unusual case, but felt that given "the overall picture and his attitude," it could not make such a finding. Hence, it imposed a prison term of five years. The sentence was composed of a two-year low term for the robbery and a three-year mandatory enhancement for the great bodily injury finding. The court stayed sentencing of the assault and battery charges under section 654 and ran all other terms and enhancements concurrently.

---

[7] It is unclear whether " 'some guy' " was the cousin, or a third person who just also needed assistance. It should be noted that the car burglary took place in the "early morning hours."

6

DISCUSSION

A.

Defendant first argues that his concurrent sentence for dissuading a witness was prohibited by section 654.  When that statute applies, the proper procedure is to impose sentence and stay it, not impose it to run concurrently.  (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1469.)  However, if the crimes arguably subject to section 654 have separate criminal intents and objectives, separate unstayed sentencing is appropriate.  (*People v. Sok* (2010) 181 Cal.App.4th 88, 99.)  We uphold the trial court's determination as long as it is supported by substantial evidence.  (*People v. Clair* (2011) 197 Cal.App.4th 949, 959.)  The determination may be express or implied by the sentence imposed.  (See *People v. Galvez* (2011) 195 Cal.App.4th 1253, 1263.)

In this case the finding of separate objectives was amply justified.  Defendant and his companion first accosted Garcia with the specific intent to threaten him and dissuade him from pursuing or participating in the criminal prosecution concerning the car burglary.  In furtherance of this intent defendant struck Garcia repeatedly in the face. Either defendant or his companion then ripped the chain from Garcia's neck.  This act could theoretically have been prompted by the same objective—to show Garcia that his failure to recant would lead to further losses.[8]  However, it could also—and more probably—have been the result of defendant's having spotted the chance to profit

---

[8]  Defendant argues that the necklace was "broken" just as were Garcia's nose and a tooth.  But the necklace was not just *broken*, it was *taken*.

financially from the assault on the victim. Thus, the robbery was distinct from the threats and section 654 did not prohibit separate punishment for the two offenses.

B.

Defendant then argues that the court abused its discretion in sentencing him to prison rather than placing him on probation. Again we disagree.

As defendant recognizes, the trial court has broad discretion in determining whether to place a defendant on probation and the defendant bears a heavy burden in attempting to show that there has been an abuse of that discretion. (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282.) He also acknowledges that due to the finding that he inflicted great bodily injury on the victim, he is presumptively ineligible for probation. (Pen. Code, § 1203, subd. (e)(3).) However, he argues that because he was "extremely youthful" and had a nominal prior record, the trial court did abuse its discretion.

The criteria which may support a finding of an unusual case and therefore overcome the presumption of section 1203, subdivision (e)(3), are set out in California Rules of Court, rule 4.413. It should be noted, however, that the mere existence of any such factor does not require the court to find an unusual case, it merely *allows* the court to do so. (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178.)

The only factor under which defendant qualifies is that of rule 4.413, subdivision (c)(2)(C)—"[t]he defendant is youthful or aged, and has no significant record of prior criminal offenses." Although defendant describes himself as "extremely youthful," as he was 24 years old when the crimes were committed, we think that simply

8

"youthful" is the best he can argue. (Cf. *People v. Dillon* (1983) 34 Cal.3d 441, 451 [17 years old]; *People v. Barrera* (1993) 14 Cal.App.4th 1555, 1568 [31 years old "hardly [] youthful"].) When the car burglary conviction is added to his history of driving offenses, it becomes a closer question as to whether his prior record was not "significant" (Cal. Rules of Court, rule 4.413(c)(2)(C), but for purposes of argument we will agree that defendant qualified and that the trial court therefore *could* have placed him on probation.

Nevertheless, we find no abuse of discretion in the failure to do so. Section 1203, subdivision (e), requires that the "interests of justice" be served by the grant of probation. In this case the trial court was aware that defendant had pleaded guilty in the car burglary case. He had subsequently attempted to pervert justice by threatening the victim and dissuading him from testifying, and had also struck him repeatedly with enough force to break his nose. Defendant then, in a gratuitous act of criminality, participated in the forcible taking of Garcia's necklace. Thus, although defendant's initial offense (the car burglary) was apparently opportunistic and stealthy, he then manifested a willingness to use violence to avoid the consequences of his crime and also had no qualms about once again taking the victim's property. As the trial court noted, in discussing the matter with the probation officer defendant appeared to reflect the belief that because he had been largely successful in his threats, he should escape punishment in the current case.

These factors do not bode well for defendant's future conduct and certainly do not suggest that the interests of justice require that he be granted the leniency of probation. There was no abuse of discretion.

9

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.