Filed 5/13/16  P. v. Dean-Baumann CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069430 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1210970) |
| MELISSA DEAN-BAUMANN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Jeffrey J. Prevost, Judge.  Affirmed.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Melissa Dean-Bauman of second degree murder (Pen. Code, § 187, subd. (a); count 1),[1] vehicular manslaughter with gross negligence while intoxicated (§ 191.5, subd. (a); count 2), driving under the influence of alcohol and/or drugs causing injury (Veh. Code, § 23153, subd. (a); count 3), felony drunk driving (Veh. Code, § 23153, subd. (b); count 4), and felony child endangerment (§ 273a, subd. (a); count 5). The jury found true allegations Dean-Bauman inflicted great bodily injury on victims 70 years of age or older in committing counts 2 through 4 (§ 12022.7, subd. (c)).

The court sentenced Dean-Baumann to prison for 15 years to life for count 1. The court sentenced Dean-Baumann to concurrent terms of six years for count 2 and two years each for counts 3 and 4. Pursuant to section 12022.7, subdivision (c), the court added a five-year enhancement to the sentence for count 2 and additional enhancements of one year and eight months (one-third of the five years) to each of the sentences for counts 3 and 4. The court also sentenced Dean-Baumann to one year and four months for count 5, to be served consecutively to count 1. Pursuant to section 654, the court stayed punishment for counts 2 through 5.

On appeal, Dean-Baumann contends: (1) the court erred in failing to instruct on the lesser included offense of misdemeanor child abuse/endangerment (§ 273a, subd. (b)) as to count 5 because the jury could have concluded her child was not at great risk of bodily injury since the vehicle Dean-Baumann drove while under the influence of both

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

alcohol and drugs was a sports utility vehicle (SUV) as opposed to some smaller vehicle; (2) the true finding on the great bodily injury enhancement for count 2 should be stricken as unauthorized under section 12022.7; and (3) the drunk driving convictions in counts 3 and 4 should have been vacated because they are lesser included offenses of the gross vehicular manslaughter conviction in count 2. The People concede the second contention. Therefore, we strike the enhancement for count 2. We disagree with the other contentions and affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

In May 2003 a police officer stopped Dean-Baumann after he observed her vehicle make a right turn and then a U-turn before it turned left, drove over a sidewalk, through a dirt field, and stopped behind a house. When the officer explained why he stopped her, Dean-Baumann stated she was going home and this was the quickest route. The officer smelled alcohol on her breath and noticed she had bloodshot and watery eyes. She also had slurred speech and a dry mouth. Dean-Baumann denied drinking. However, she did not perform well on field sobriety tests. She was cooperative, but giggly during the field sobriety tests. The results of two preliminary alcohol sensor tests (breathalyzer) were 0.14 and 0.13. Dean-Baumann was arrested and cited for driving under the influence. Later, in 2009, Dean-Baumann was required to attend drug and alcohol counseling sessions regarding the impact of driving under the influence.

On September 10, 2012, Dean-Baumann's boyfriend called 911 because he suspected she was trying to pick up their child from school after she had been drinking.

Dean-Baumann knocked the phone from his hand as he was calling and she left with the child in the car. Her boyfriend told her not to drink and drive with their children in the vehicle.

B

On December 13, 2012, at approximately 12:30 p.m., Dean-Baumann ran a red light at the intersection of McCall Boulevard and Encanto Drive in Menifee, California. She drove her Chevrolet Tahoe into the intersection at a high rate of speed and struck a Saturn driving the opposite direction, which was turning left onto Encanto Drive. A witness, who was in the left turn lane behind the Saturn, saw the Tahoe come toward the intersection without slowing down. The driver of the Tahoe did not appear to be paying attention to the road. She had one hand on the steering wheel in the 12 o'clock position as she looked toward the right. She appeared to be trying to find something or grab something with her other hand.

Donald F. was taking his 86-year-old wife, Phyllis F., to the hairdresser and turned left on a green turn signal from McCall Boulevard onto Encanto Drive. As he did so, his vehicle was hit on the passenger side by Dean-Bauman's vehicle. Phyllis F. died from blunt impact injuries to the torso as a result of the collision. Donald F. was taken to a trauma center. He sustained cuts, bruises and a concussion.

After the collision, a witness saw Dean-Baumann raise her hands in the air. It looked like she was talking or yelling at someone in the back of the vehicle. Another witness saw the driver of the Tahoe exit her vehicle crying and holding a child. Dean-Baumann's boyfriend, went to the scene to pick up the child.

4

A community service officer of the Riverside County Sheriff's Department responded to the traffic collision. The officer found an elderly male in the driver's seat and an elderly female in the front passenger seat. Both were injured. The male was bleeding from his head. The female had a large gash wound to the skull. She was unresponsive and her head draped forward. The male was alert, but agitated.

When the responding officer initially contacted Dean-Baumann, she was crying and appeared hysterical. Another officer later contacted Dean-Baumann at the scene to discuss the accident. Dean-Baumann said she and her daughter had come from Fallbrook that morning to purchase a puppy and they were on their way home when the accident occurred. She denied drinking or taking medication before the accident other than medication for acid reflux.

The officer observed her eyes were bloodshot and watery, her speech was slurred and the odor of alcohol emanated from her breath and person. He advised her the passenger in the vehicle she hit was dead at the scene. During field sobriety tests, as Donald F. was being loaded into an ambulance, Dean-Baumann laughed and talked about how hard the tests were and how they were like games children play.

Dean-Baumann's blood alcohol level was found to be 0.16 percent, which is twice the level at which a person is impaired for driving. Since the sample was drawn more than an hour after the accident, her blood alcohol level at the time of the accident was likely higher than 0.17 percent. She also tested positive for methamphetamine and marijuana. The amount of methamphetamine found in her blood was more than three

5

times the therapeutic level. The levels of cannabinoids found in her blood indicated marijuana use within hours of when the blood was drawn.

During an inspection of the SUV, an open empty bottle of vodka was found inside a closed compartment between the passenger and driver seat of the SUV under some papers. The vehicle also smelled of alcohol.

A deputy sheriff for the Riverside County Sheriff's Department analyzed the crash data retrieval (CDR) box in the Tahoe. The CDR records data when it is senses something is about to happen. Various things can trigger the module such as braking, the start of an impact, deployment of an airbag or a combination of things. The module records information prior to the event based on an algorithm from the time the device is enabled, i.e., algorithm enabled (AE). In this case, the data showed the vehicle was traveling 59 miles per hour five seconds before AE and decelerated to 53 miles per hour two seconds before AE. One second before AE, the speed was 29 miles per hour. That amount of deceleration could not occur with braking, but instead would occur if the vehicle struck something.

C

Dean-Baumann presented evidence she purchased a puppy at a residence approximately three miles from the intersection where the accident occurred. The person who sold the puppy to Dean-Baumann did not notice she was under the influence of alcohol.

6

## DISCUSSION

## I

Dean-Baumann contends the court erred in failing to instruct the jury on the elements of misdemeanor child abuse or endangerment as a lesser included offense of felony child abuse or endangerment, as charged in count 5. Dean-Baumann contends a jury could conclude, even though she drove while intoxicated through a red light at a high rate of speed and broadsided another vehicle, her child was not endangered under circumstances or conditions likely to produce great bodily injury because the child was riding restrained in a car seat in the back seat of her SUV. Dean-Baumann claims the large, heavy SUV was "somewhat impervious to damage" and the child was "more protected than a child in a standard sedan, or small vehicle." We are not persuaded.

## A

"A trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.' [Citation.] Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense. [Citation.] 'The rule's purpose is … to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence.' [Citation.] In light of this purpose, the court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of' the lesser offense.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 403-404.)

7

"[T]he existence of *'any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could … conclude[]" ' that the lesser offense, but not the greater, was committed." (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).)

"Section 273a defines both felony and misdemeanor child abuse. The criminal acts proscribed by section 273a are: (1) willfully causing or permitting any child to suffer, or (2) inflicting thereon unjustifiable physical pain or mental suffering, or (3) having the care or custody of any child, willfully causing or permitting the person or health of such child to be injured, or (4) willfully causing or permitting such child to be placed in such situation that his or her person or health is endangered." (*People v. Moussabeck* (2007) 157 Cal.App.4th 975, 980 (*Moussabeck*).) The *Moussabeck* court explained the difference between felony child abuse or endangerment and misdemeanor child abuse or endangerment: "If the act is done under circumstances or conditions likely to produce great bodily injury or death, it is a felony (§ 273a, subd. (a)); if not, the offense is a misdemeanor (§ 273a, subd. (b)). [Citation.] Misdemeanor child abuse (citation), is a lesser included offense of felony child abuse." (*Moussabeck*, *supra*, at p. 980.)

Courts have defined the phrase "circumstances … likely to produce great bodily harm or death" in section 273a to mean " 'the probability of serious injury is great.' "

8

(*People v. Sargent* (1999) 19 Cal.4th 1206, 1223; *People v. Chaffin* (2009) 173 Cal.App.4th 1348, 1351-1353; contra, *People v. Wilson* (2006) 138 Cal.App.4th 1197, 1204 [holding the term "likely" in section 273a means "a substantial danger, i.e., a serious and well-founded risk, of great bodily harm or death"].) The jury, which convicted Dean-Baumann of felony child endangerment, was instructed "[t]he phrase likely to produce great bodily harm or death means the probability of great bodily harm or death is high." (CALCRIM No. 821.)

We need not decide the contours of the definition of "likely" in section 273a, because, under any standard, we conclude there is no substantial evidence from which a reasonable jury could find Dean-Baumann committed misdemeanor child endangerment, but not felony child endangerment. The evidence in the case showed Dean-Baumann consumed alcohol, methamphetamine and marijuana before or while she drove her three-year-old child from Fallbrook to Menifee to purchase a puppy. She had an open empty bottle of vodka in her vehicle. Immediately before the accident, she was driving 59 miles per hour on a roadway with a speed limit of 35 miles per hour. She admitted she was not looking where she was going as she approached the intersection. She ran a red light at a high rate of speed and struck another vehicle, killing one of the occupants.

Each of the intoxicants, and the combination thereof, impaired Dean-Baumann's ability to drive. Dean-Baumann drove under the influence with her child in the car knowing the risks involved. She had previously attended courses about the dangers of driving under the influence. In addition, her boyfriend had recently called 911 because

9

he was concerned about her drinking and driving with children in the vehicle. He told her not to drink and drive with their children in the car for their safety.

The fact neither she nor her child were significantly injured in the accident is fortuitous, but irrelevant. (*People v. Clair* (2011) 197 Cal.App.4th 949, 955-956 [lack of evidence of actual injury or harm is irrelevant for violation of § 273a, subd. (a)].) We cannot agree a reasonable jury could conclude Dean-Baumann's criminally negligent conduct did not create a probability of serious injury for her child simply because she was driving a large SUV and happened to crash into a smaller vehicle. Even in an SUV, there is a significant risk of great bodily injury and death associated with driving under the influence of alcohol and drugs. Dean-Baumann's impaired driving could have just as easily caused her to become involved in a roll-over accident or a collision with a larger vehicle, with a much different outcome for the child. Given the evidence in this case, there was no basis upon which to give the instruction on the lesser included offense.

### B

Even assuming, arguendo, it was error not to instruct on the lesser included offense of misdemeanor child abuse, it was not prejudicial. We review the failure to instruct sua sponte on a lesser included offense in a noncapital case under state standards of reversibility. (*Breverman*, *supra*, 19 Cal.4th at p. 165, citing Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) " 'Appellate review under *Watson* … takes an entirely different view of the evidence [than that employed when considering whether or not to instruct on a lesser included offense]. Such posttrial review focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have

done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result. Accordingly, a determination that a duty arose to give instructions on a lesser included offense, and that the omission of such instructions in whole or in part was error, does not resolve the question whether the error was prejudicial. Application of the *Watson* standard of appellate review may disclose that, though error occurred, it was harmless.' " (*People v. Moye* (2009) 47 Cal.4th 537, 556 (*Moye*).)

The evidence in this case overwhelmingly supported the jury's finding Dean-Baumann's conduct in driving under the influence of a combination of intoxicants at a high rate of speed and not paying attention to the road ahead created a high probability of great bodily harm or death for her child who was riding in the vehicle. Speculation the child was not at actually at risk of suffering death or great bodily injury because the child was in an SUV is so comparatively weak we conclude any instructional error was harmless. It is not reasonably probable Dean-Baumann would have obtained a more favorable outcome had a misdemeanor child endangerment instruction been given. (*Moye, supra,* 47 Cal.4th at pp. 557-558.)

II

With respect to count 2, the jury convicted Dean-Bauman of vehicular manslaughter of Phyllis F. (§ 191.5, subd. (a).) The jury found true allegations Dean-

11

Baumann inflicted great bodily injury upon Donald F. when she committed count 2 (§ 12022.7, subd. (c)). As a result, the court imposed and stayed the five-year sentence enhancement for count 2.

Dean-Baumann contends, and the People concede, the enhancement for count 2 must be stricken pursuant to *People v. Cook* (2015) 60 Cal.4th 922 (*Cook*). The Supreme Court held in *Cook* great bodily injury enhancements under section 12022.7 do not apply to a murder or manslaughter conviction, even if the victim who suffered great bodily injury is not the deceased victim. (*Cook*, *supra*, at p. 935.) We, therefore, strike the great bodily injury enhancement for count 2.

### III

Dean-Baumann contends the convictions under counts 3 (Veh. Code, § 23153, subd. (a), driving under the influence of alcohol and/or drugs causing injury) and 4 (Veh. Code, § 23153, subd. (b), felony drunk driving) should have been vacated because they are necessarily included offenses of count 2 (§191.5, subd. (a), gross vehicular manslaughter while intoxicated). As a result, Dean-Baumann contends the court erred in sentencing her and staying punishment as to these counts under section 654. The People contend the convictions under counts 3 and 4 are not necessarily included offenses of count 1 because they involve a different victim than charged in count 2. The People are correct.

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses

12

charged." [Citations.]' [Citation.] Section 954 generally permits multiple conviction. Section 654 is its counterpart concerning punishment. It prohibits multiple punishment for the same 'act or omission.' When section 954 permits multiple conviction, but section 654 prohibits multiple punishment, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited. [Citations.] … [¶] A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' [Citation.] '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' " (*People v. Reed* (2006) 38 Cal.4th 1224, 1226-1227.)

The Supreme Court has held a defendant in a single driving incident may be convicted of multiple crimes where he or she commits vehicular manslaughter in violation of the Penal Code as to one victim and drunk driving in violation of the Vehicle Code causing injury to a separate victim. (*People v. McFarland* (1989) 47 Cal.3d 798, 803 (*McFarland*).) Noting the crime of vehicular manslaughter with gross negligence constitutes a crime of violence against a person, the court held where "a defendant commits vehicular manslaughter with gross negligence—an act of violence against the person—he [or she] may properly be punished [for a violation of the Vehicle Code] for injury to a separate individual that results from the same incident." (*Id.* at p. 804.)

Here, Dean-Baumann was convicted under count 2 for gross vehicular manslaughter of Phyllis F. for driving while intoxicated in violation of section 191.5, subdivision (a). She was convicted under counts 3 and 4 for causing injury to Donald F.

13

under Vehicle Code section 23153, subdivisions (a) and (b), for drunk driving. Therefore, counts 3 and 4 are not necessarily included offenses of count 2. (*McFarland*, *supra*, 47 Cal.3d at p. 804.)

The cases cited by Dean-Baumann are single victim cases in which courts have held a violation of Vehicle Code section 23153, subdivision (a), for driving under the influence is a necessarily included offense of gross vehicular manslaughter while intoxicated. (*People v. Miranda* (1994) 21 Cal.App.4th 1464, 1468; *People v. Binkerd* (2007) 155 Cal.App.4th 1143, 1149 ["where one victim dies from an alcohol-related accident due to a violation of Vehicle Code [section 23153], the Vehicle Code violation would always be a lesser included offense" of vehicular manslaughter while intoxicated].) Such cases are inapposite when the charges involve separate victims. The court properly sentenced Dean-Baumann as to counts 3 and 4 and stayed the punishment for those counts pursuant to section 654.

DISPOSITION

The great bodily injury enhancement accompanying count 2 is stricken. The court is directed to prepare an amended abstract of judgment reflecting the modification and to forward the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

AARON, J.

15