Filed 2/28/24  P. v. Soria CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ISREAL NATHANIEL SORIA,<br><br>     Defendant and Appellant. | A166860<br><br>(Humboldt County<br>Super. Ct. No. CR2101834) |

Defendant Isreal Nathaniel Soria, Jr., fired 11 gunshots into a residence and a jury convicted him of attempted premeditated murder and attempted robbery.  (Pen. Code, §§ 664, 187, 211.)[1]  The trial court sentenced him to 25 years to life on the premeditated murder conviction and a consecutive eight-month term on the attempted robbery conviction.  Soria appeals.  He contends the trial court erred by not staying the eight-month sentence for his attempted robbery conviction under section 654.  We affirm.

**BACKGROUND**

Late one evening in June 2021, police went to a home in McKinleyville, California, after receiving a report that someone had been shot.  When police arrived, D.E. told them a man had entered his home, shot him, and might still be in his house.

---

[1] Undesignated statutory references are to the Penal Code.

1

Officers found 10 bullet holes inside the house. Outside, they found 11 bullet casings, a discarded semiautomatic firearm, and a fully loaded revolver. The semiautomatic had a magazine capacity of 32 bullets; in the gun's chamber and magazine were 31 unexpended bullets. One bullet had a casing that matched the bullet casings found outside D.E.'s home.

Eventually, police found and arrested Soria. During an interview with police, Soria revealed his ties to the " 'north side' gang' " and admitted that he was a hitman who was "paid to kill." He said that D.E. had " 'fucked with someone that's part of [his] gang' " by stealing marijuana, so he " 'emptied . . . a seventeen round clip' " into D.E.'s home. Soria told police D.E. had thousands of dollars' worth of marijuana and he was supposed to get "everything . . . in [D.E.'s] house." However, D.E. " 'pulled an assault rifle' " on him first, so he fired before D.E. could shoot him.

At trial, police testified that shots were fired into D.E.'s home from outside, and the bullet casings found outside D.E.'s house were all compatible with the magazine of the discarded gun. Police also testified that out of the 10 bullet holes found in the home, there was a grouping of 4 bullet holes in the breakfast bar, indicating the shooter had taken aim before firing the gun.

Soria testified that D.E. "flaunt[ed] his marijuana and assault rifles" on his social media and he wanted to "rip [D.E.] off." Soria testified that as he was standing behind D.E.'s home, he saw D.E. holding an assault rifle in the kitchen. Then, he claimed D.E. looked in his direction, "cock[ed] back the lever," and said "[w]ho the fuck is that?" At that point, Soria "[s]tarted firing" before D.E. could " 'start firing' " at him. Soria went on to say he fired in a panic, without aiming, and "wasn't even looking directly at [D.E.] when [he] was firing." Soria admitted that he owned the recovered revolver.

The jury convicted Soria of attempted premeditated murder and attempted robbery.  (§§ 664, 187, 211.)  At sentencing, the trial court asked whether it should "stay sentences pursuant to [section] 654."  The prosecutor maintained that Soria should be sentenced for both crimes because he committed multiple acts to achieve his two objectives—robbery and murder. Soria disagreed; he argued that the sentence for attempted robbery must be stayed because he performed one indivisible act and his only intention was to commit a robbery.

The trial court sentenced Soria to a total of 25 years and 8 months in prison, comprised of 25 years to life on the premeditated murder conviction and a consecutive 8-month term for the attempted robbery conviction.  It concluded Soria had two objectives, the "gang hit but also the . . . separate offense of attempting to rob" D.E.

## DISCUSSION

Soria claims the trial court erred by not staying the term for his attempted robbery conviction pursuant to section 654.

Section 654 states:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  "Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry."  (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)  First, the trial court considers "if the different crimes were completed by a 'single physical act.'"  (*Ibid.*)  While making this determination, the court is mindful that a " 'defendant's intent and objective, not the temporal proximity of his offenses[,] determine whether [a] transaction is indivisible.' "  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

If the trial court concludes more than one act occurred or that each conviction shared common acts, it reviews "whether a defendant's criminal conduct reflects a single intent or objective." (*People v. Corpening, supra,* 2 Cal.5th at p. 310; *People v. Clair* (2011) 197 Cal.App.4th 949, 959.) If the trial court finds the defendant " ' "harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, [the defendant] may be punished for each statutory violation committed in pursuit of each objective." ' " (*Clair*, at p. 959.) On review of the trial court's findings, we "presume the existence of every fact the . . . court could reasonably deduce from the evidence' " and the court's " 'findings will not be reversed on appeal if there is any substantial evidence to support them.' " (*People v. Latten* (2021) 63 Cal.App.5th 574, 577, italics omitted.)

# I.

## *More Than One Act*

Soria argues the convictions were based on the same "indivisible act" of firing the handgun through a window at D.E., and therefore his robbery sentence should be stayed. We disagree.

Substantial evidence supports the trial court's implied conclusion that Soria performed multiple acts as a "course of conduct" to achieve his criminal objectives. (*People v. Jacobo* (2019) 37 Cal.App.5th 32, 42.) First, Soria admitted to firing more than 11 shots into D.E.'s home. Since the gun was a semiautomatic, each bullet that entered the home would have required the individual and separate act of pulling the gun's trigger. (*People v. Trotter* (1992) 7 Cal.App.4th 363, 368 ["Each shot required a separate trigger pull" and "under the long recognized 'intent and objective' test, each shot evinced a separate intent to do violence"]; *People v. Harrison, supra,* 48 Cal.3d at p. 335.)

4

Second, Soria told officers that he had emptied an "entire . . . magazine into the home," but the magazine of his discarded gun was almost fully loaded when it was recovered. This evidence supported a finding that Soria took the additional action of reloading more bullets or replacing the magazine.

## II.

### *Multiple Intents or Objectives*

Soria argues he harbored only one objective on the night he was arrested: to rob D.E. of his marijuana. This argument is unavailing because substantial evidence supports the trial court's conclusion that he harbored multiple criminal objectives, including a "gang hit" and attempted robbery. (*Harrison*, at p. 335; *People v. Clair, supra*, 197 Cal.App.4th at p. 959.)

First, there was substantial evidence showing Soria intended to rob D.E. Soria told police he was paid to "get all of everything that was in [D.E.'s] house." He testified that he saw D.E. flaunting his marijuana and guns on social media and intended to "rip [him] off."

Second, there was substantial evidence demonstrating Soria intended to kill D.E. Soria told the investigating officer he was "paid to kill" by his gang, he was a "hitter" or "hitman," and he intended to kill D.E. He admitted targeting D.E. because he " 'fucked with someone that's part of [his] gang' " by stealing marijuana. Soria went to D.E.'s home with two loaded guns and fired at least 11 bullets into D.E.'s home. He also reloaded one of his guns after the first volley of shots.

Based on this evidence, the trial court could have reasonably concluded Soria sought to achieve two different criminal objectives. (*People v. Latten, supra*, 63 Cal.App.5th at p. 577 [defendant held a distinct intent and objective with each act taken].) As such, the court did not err in imposing

5

consecutive sentences on the attempted murder and attempted robbery convictions.  (*People v. Jones* (2002) 103 Cal.App.4th 1139.)

## DISPOSITION

The judgment is affirmed.

_____

Mayfield, J.*

We concur:

_____

Richman, Acting P. J.

_____

Miller, J.

*People v. Soria* (A166860)

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.